**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**
_____

DARYL L. MOORMAN,
On his own behalf and on behalf of all
others similarly situated,

        Plaintiff,

                                                                   Case No.: 18-cv-820

v.

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS, LLC,
SPECTRUM MANAGEMENT HOLDING COMPANY, LLC,
TWC ADMINISTRATION, LLC

        Defendants.
_____

**COLLECTIVE ACTION COMPLAINT**
_____

Plaintiff Daryl Moorman on behalf of himself and all others similarly situated, through his attorneys, Axley Brynelson, LLP and Gingras, Cates & Wachs, LLP, hereby files this Collective Action Complaint against Defendants Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC and TWC Administration, LLC and alleges as follows:

**NATURE OF THE CASE**

1. This is a collective action for unpaid wages and overtime brought pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

4. Plaintiff Daryl L. Moorman ("Moorman") is a citizen of the United States and of the State of Tennessee.

5. Moorman is presently employed by Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC and/or TWC Administration, LLC as a Field Technician IV.

6. Moorman began his employment with Charter Communications, Inc. and/or Charter Communications, LLC in October, 2005.

7. Moorman, and all others similarly situated, at all material times, were "employees" within the meaning of 29 U.S.C. § 203(e).

8. Moorman has consented in writing to be a party Plaintiff in this action and the written consent form required by 29 U.S.C. § 216(b) is attached to this Complaint as Exhibit A and incorporated herein by reference.

9. At all times relevant hereto, Charter Communications, Inc. was a foreign for profit corporation, registered, organized and formed in the State of Delaware that conducted business in the Western District of Wisconsin, as well as multiple other locations throughout the United States. Its registered agent in Wisconsin is Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

10. At all times relevant hereto, Charter Communications, LLC was a foreign for profit corporation, registered, organized and formed in the State of Delaware that conducted business in the Western District of Wisconsin, as well as multiple other locations throughout the United States.

Its registered agent in Wisconsin is Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

11.     At all times relevant hereto, Spectrum Management Holding Company, LLC was, on information and belief, a foreign for profit corporation, registered, organized and formed in the State of Delaware that conducted business in the Western District of Wisconsin, as well as multiple other locations throughout the United States.

12.     At all times relevant hereto, TWC Administration, LLC was a foreign for profit corporation, registered, organized and formed in the State of Delaware that conducted business in the Western District of Wisconsin, as well as multiple other locations throughout the United States.

13.     In May, 2016, Charter Communications, Inc. announced that it had completed its acquisition of Time Warner Cable, Inc. and Bright House Networks, LLC, which acquisition was approved by the United States Federal Communications Commission.

14.     On information and belief, at all times relevant hereto, Charter Communications, LLC, Spectrum Management Holding Company, LLC and TWC Administration, LLC (hereinafter, collectively, "Charter"), were "employers" within the meaning of 29 U.S.C. § 203(d).

15.     At all times relevant hereto, Charter was an "enterprise" within the meaning of 29 U.S.C. § 203(r).

16.     At all times relevant hereto, Charter was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

17.     Charter offers services to consumers and businesses under different business (brand) names, including, but not limited to, Spectrum.

18. Charter provides services to more than 26 million residential and business customers in at least 41 states, including Wisconsin, and provides telecommunications services, including telephone, cable, and internet access services.

## FACTS

19. Moorman, and all others similarly situated, are employed by Charter as technicians, whose job responsibilities include installation and service of telecommunication services, including telephone, cable, and internet services.

20. In order for Charter to sell and maintain its cable, television, and internet services, Charter employs approximately 10,000 individuals whose responsibility is to install, upgrade, troubleshoot, and maintain these services.

21. The individuals responsible for installing, upgrading, troubleshooting, and maintaining Charter's cable and internet services include a number of broadband and system technicians, including Moorman, and all others similarly situated.

22. Moorman, and all others similarly situated, are required to comply with Charter's policies, including policies regarding company vehicles. Such policies are identical and consistent across the United States.

23. Moorman, and all others similarly situated, are required by company policy and established practice to check their cellular telephones each workday to learn their initial job assignment and to use GPS, or some mapping technology, to determine the appropriate route to this first assignment.

24. Moorman, and all others similarly situated, do not receive any compensation for time spent on a daily basis checking their telephone or similar device and mapping routes to the first assignment of the day.

25. Moorman, and all others similarly situated, are required, at the end of each workday, to remove certain equipment from their Charter vehicle and to return the equipment to their Charter vehicle on the next workday and prior to driving to their first customer job of the day.

26. Technicians are not compensated for time spent removing or returning equipment to their company vehicle each workday.

27. Technicians are subject to discipline, up to termination, for failure to remove certain equipment from their vehicle daily and are subject to having to reimburse Charter for any loss of or damage to such equipment.

28. Moorman, and all others similarly situated, are assigned a company vehicle and are required to follow all Charter policies regarding company vehicles, including policies relating to daily vehicle inspections.

29. As part of the daily-required vehicle inspection, Moorman, and all others similarly situated, must perform a detailed inspection of the vehicle that includes, but is not limited to, inspection of ladders, lights, tires, oil, blinkers, and a complete walk around or "circle of safety" inspection of the vehicle.

30. Moorman, and all others similarly situated, are not compensated for time spent performing required vehicle inspections.

31. Moorman, and all others similarly situated, spend at least 15 minutes daily at the start of their shift performing those tasks set forth in the above paragraphs and receive no compensation for performing these required tasks.

32. The combined time need to perform the tasks set forth in the above paragraphs is more than *de minimis*.

33. It is Charter's policy that Moorman, and all others similarly situated, cannot clock in, for timekeeping purposes, until they arrive at the driveway of their first job of the day, unless there was a specific company obligation prior to the first job such as attending a required company meeting.

34. The tasks set forth above in the above paragraphs were required by Charter of Moorman, and all others similarly situated.

35. The tasks set forth above in the above paragraphs were performed for Charter's benefit.

36. Charter had knowledge that Moorman, and all others similarly situated, were performing the tasks set forth in the above paragraphs.

37. Moorman, and all others similarly situated, are paid on an hourly basis.

38. Moorman, and all others similarly situated, earned quarterly bonuses based on established criteria.

39. Such bonuses were non-discretionary, i.e., if Moorman, and all others similarly situated, satisfied the stated criteria, he or she received the quarterly bonus.

40. Charter did not include quarterly bonuses in total compensation for Moorman or all others similarly situated, resulting in a reduced regular rate of pay and reduced overtime pay to Moorman and all others similarly situated.

## COLLECTIVE ACTION ALLEGATIONS

41. Moorman seeks to represent the following FLSA collective classes:

    a) A national class of technicians who performed work off the clock and were not compensated for such work ("National Off Clock Collective Class"); and

    b) A national class of Charter employees who received non-discretionary bonuses where the bonuses were not included in total compensation for determining regular rate of pay and overtime compensation ("National Bonus Collective Class").

42. The class definition for the National Off Clock Collective Class is:

    Current and former employees of Charter during the period October 4, 2015, to the present, who were employed as field technicians and performed more than *de minimis* off the clock tasks, including, but not limited to, vehicle inspections, reviewing customer assignments, and mapping routes to residences or places of business, and transporting tools and equipment between vehicles and employee residences without receiving compensation.

43. The Class definition for the National Bonus Collective class is:

    Current and former Charter employees during the period October 4, 2015, to the present, who received non-discretionary bonuses and such bonuses were not included in the employee's total compensation for determining the regular rate of pay and corresponding overtime compensation.

7

44. The putative collective class members are similarly situated because, based upon Charter's established policies, procedures, and practices, all putative National Off Clock Collective Class members are required to perform that work described in the above paragraphs without compensation.

45. The putative collective members are similarly situated because, pursuant to established payroll policies, procedures, and practices, all putative National Bonus Collective Class members did not receive full overtime compensation as required by the FLSA when non-discretionary bonuses were not included in total compensation for determining the putative class members' regular rate of pay and corresponding overtime rate.

46. Charter's conduct was willful for reasons including, but not limited to, the following:

  (a) The law was clearly settled that an employer must pay employees for all hours that the employer permitted or suffered its employees to work and it refused to do so;

  (b) Charter has been involved in past litigation involving the same or similar allegations of off-the-clock work; and

  (c) Federal law is clear that employers must consider periodic bonus payments in calculating the regular rate of pay and overtime owed in a workweek.

**FIRST CAUSE OF ACTION:**
**FLSA VIOLATION FOR FAILURE TO PAY FOR ALL OFF THE CLOCK HOURS WORKED**

47. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 46 above.

48. During the three years preceding the filing of this action, Charter was an employer and Moorman and putative collective class members were employees as those terms are defined in the FLSA.

49. During the three year period prior to the commencement of this action, Moorman and putative collective class members performed required job duties at the start of their daily work shifts for which they were not compensated, including, but not limited to, those duties described in the above paragraphs.

50. Moorman and other full-time putative collective class members worked more than 40 hours in a workweek.

51. Moorman and other full-time putative collective class members were entitled to overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

52. By Charter's failure to compensate Moorman and other full-time Off Clock Collective Class members for hours worked, as described above, Charter violated the FLSA by its failure to pay all wages and overtime owed.

53. Charter's violation of the FLSA was willful.

54. Moorman and members of the National Off Clock Collective Class have suffered harm and are entitled to unpaid overtime, interest on unpaid overtime, liquidated damages, and costs and attorneys' fees as permitted by law.

## SECOND CAUSE OF ACTION:
## VIOLATION OF THE FLSA FOR FAILURE TO PAY OVERTIME ON NON-DISCRETIONARY BONUSES

55. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 54 above.

56. During the three-year period preceding the commencement of this action, Charter paid to its non-exempt employees periodic non-discretionary bonuses.

57. For one or more of these non-discretionary bonuses, Charter failed to include a pro-rated amount of the non-discretionary bonus in Moorman and putative National Bonus Collective class members' total compensation for purposes of determining such employees' regular rate of pay and proper overtime payment.

58. Charter's conduct was willful.

59. Moorman and putative National Bonus Collective Class members have suffered harm as a result of Charter's willful violation of the FLSA and are entitled to recover unpaid overtime, interest on unpaid overtime, liquidated damages, costs, and attorneys' fees as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Moorman and all others similarly situated request that the Court:

A. Conditionally certify the FLSA national classes and authorize that notice be sent to class members, informing them of their right to consent to join the FLSA portion of this action;

B. Declare that Charter's violations of the FLSA were willful;

C. Award to Moorman, and all others similarly situated, all unpaid wages and overtime owed;

D. Award to Moorman, and all others similarly situated, liquidated damages in an amount equal to the amount of their unpaid regular and overtime wages pursuant to 29 U.S.C. § 216(b);

E. Award to Moorman, and all others similarly situated, interest on unpaid wages and overtime;

F. Award to Moorman, and all others similarly situated, their costs and attorneys' fees pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 54; and

G. Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Moorman hereby respectfully demands a jury trial pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38(a).


Dated:  October 4, 2018                    Respectfully submitted,

s/ *Michael J. Modl*
Michael J. Modl
Heath P. Straka
**AXLEY BRYNELSON, LLP**
2 E. Mifflin Street, Suite 200
Madison, WI 53703
Tel:  (608) 257-5661
Fax:  (608) 257-5444
mmodl@axley.com
hstraka@axley.com


s/ *Robert J. Gingras*
Robert J. Gingras

**GINGRAS, CATES & WACHS**
8150 Excelsior Drive
Madison, WI 53717
Tel: (608) 833-2632
Fax: (608) 833- 2874
gingras@gcwlawyers.com

*Attorneys for Plaintiff Daryl Moorman*