# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

**Daryl L. Moorman, Steven M. Dymond, on their own behalf and on behalf of all others similarly situated**

       **Plaintiffs,**

**v.**

**Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and TWC Administration, LLC**

       **Defendants.**

Case No. 18-cv-820

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

SIDLEY AUSTIN LLP

Max Fischer
555 West Fifth St., Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600
mfischer@sidley.com

Margaret Hope Allen
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Tel: (214) 981-3300
Fax: (214) 981-3400
margaret.allen@sidley.com

GODFREY & KAHN, S.C.

Kendall W. Harrison
State Bar No. 1023438
Allison W. Reimann
State Bar No. 1107864
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Tel: (608) 257-3911
Fax: (608) 257-0609
kharrison@gklaw.com
areimann@gklaw.com

**ATTORNEYS FOR DEFENDANTS**

## INTRODUCTION

Defendants Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and TWC Administration, LLC (collectively "Defendants") move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), the parties' agreement, and Federal Rule of Civil Procedure 12(b)(3), to compel arbitration on an individual basis of the claims asserted by each of the plaintiffs Daryl L. Moorman and Steven M. Dymond and dismiss Plaintiffs' lawsuit.

Plaintiff Daryl L. Moorman and Plaintiff Steven M. Dymond (collectively, "Plaintiffs") entered into an arbitration agreement with Defendants Charter Communications, LLC and TWC Administration, LLC ("Defendants") pursuant to which they agreed to arbitrate "any dispute arising out of or relating to [their] pre-employment application and/or employment with Charter or the termination of that relationship" including, among other claims, "wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses)."  Declaration of Tammie Knapper I ("Knapper Decl. I"), ¶ 10, Ex. C; Declaration of Tammie Knapper II ("Knapper Decl. II"), ¶ 10, Ex. C, (collectively, hereinafter "Knapper Decls. I & II").

The agreement further provides that all disputes between Plaintiffs and Defendants will be brought "in arbitration on an individual basis only" and not on a class action basis.  *Id.* Despite entering into a valid arbitration agreement with Defendants covering any claims arising out of the employment relationship, and in which they specifically agreed not to bring class action claims, Plaintiffs filed the instant lawsuit, alleging violations of the Fair Labor Standards Act ("FLSA") and Wisconsin wage payment and overtime laws on a class-wide basis.

As a matter of well-settled law, the parties' arbitration agreement is binding and enforceable. And indeed, it has been upheld against challenges to its validity in other jurisdictions.[1] Because the parties' agreement is valid, and because all of Plaintiffs' claims clearly fall within its scope, their individual claims must be compelled to arbitration and their claims must be dismissed.

## FACTUAL BACKGROUND

### A.   The Parties Entered Into an Enforceable Arbitration Agreement.

#### 1.   The Solution Channel Agreement Was Presented to Plaintiffs.

Charter Communications ("Charter" or "Defendant") is a telecommunications company that offers telephone, internet, and cable services to consumers nationwide. Plaintiffs were employed by Charter as field technicians. Plaintiff Moorman's employment with Charter began in October 2005, and Plaintiff Dymond's employment began in April 2014. (Dkt. No. 23.)

Charter provides mutual arbitration agreements to its candidates and employees in its regular course of business. *See* Knapper Decls. I & II, ¶¶ 4-5. Charter's employment-based legal dispute resolution program is called Solution Channel. *Id.* ¶ 4. Charter announced the launch of Solution Channel to its employees via email on October 6, 2017 (the "Solution Channel Announcement"). *Id.* ¶¶ 5-6. The Solution Channel Announcement was sent by Paul Marchand, Charter's Executive Vice President of Human Resources, to employees' company

---

[1] The Solution Channel Agreement has itself been upheld and enforced by various other United States District Courts. *See Castorena v. Charter Commc'ns, LLC, et al.*, No. 2:18-cv-07981-jfw-k (C.D. Cal. Dec. 14, 2018) (Ex. 1); *Scarpitti v. Charter Commc'ns, Inc., et al.*, No. 1:18-cv-02133-reb-meh (D. Colo. Dec. 7, 2018 (Ex. 2); *Esquivel v. Charter Commc'ns, Inc., et al.*, No. 2:18-cv-07304-gw-mrw (C.D. Cal. Dec. 6, 2018) (Ex. 3). These rulings were provided to Plaintiffs' counsel in advance of the filing of this Motion in connection with the parties' conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

email accounts.  *Id*. ¶¶ 5-6.  Employees, including Plaintiffs, received the Solution Channel Announcement at their company email addresses.  *See Id*. ¶ 7, Ex. A.

The Solution Channel Announcement explained in part that "by participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions)…Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled.  Instructions for opting out of *Solution Channel* are also located on Panorama."  *Id*. ¶¶ 7-8 & Ex. A.

The Solution Channel Announcement also included a link to the Solution Channel web page.  *Id*. ¶ 9, Ex. B.  The Solution Channel web page is located on Panorama, Charter's intranet site that is accessible to all employees.  *Id*.  The Solution Channel web page included additional information regarding the Program, including a reference and link to Charter's Mutual Arbitration Agreement (the "Solution Channel Agreement" or the "Agreement") and to the Program Guidelines.  *Id.* ¶¶ 9-10 & Ex. B.

## 2. The Agreement Requires Plaintiffs to Arbitrate Their Disputes with Defendants.

The Arbitration Agreement requires Plaintiffs to individually arbitrate <u>all</u> disputes arising out of their employment with Defendants.  *See* Knapper Decls. I & II, Ex. C, p. 1.[2]  Plaintiffs also expressly agreed to arbitrate any challenges to the validity, enforceability or breach of the Solution Channel Agreement.  *Id.*  The Solution Channel Agreement provides, in relevant part:

---

[2] An agreement to arbitrate is a type of forum-selection clause.  *Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Sherwood v. Marquette Transp. Co.*, 587 F.3d 841, 844 (7th Cir. 2009)).  Therefore, because motions to compel arbitration concern venue, they are to be brought under Federal Rule of Civil Procedure 12(b)(3).  *Id.* (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)).  Pursuant to Rule 12(b)(3), the Court is free to consider the materials submitted with Defendants' motion, including the Solution Channel Agreement.  *Id.* (citing *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801,809-10 (7th Cir. 2011); *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1314 n.1 (11th Cir. 2013); *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365-55 (4th Cir. 2012)).

4

You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, **any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship**...**must be resolved through binding arbitration** by a private and neutral arbitrator[.]

\*\*\*

You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:

[] all disputes, claims, and controversies that could be asserted in court or before an administrative agency…including without limitation…**wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses)**[.]

\*\*\*

[] all disputes, claims, and controversies…**whether made against Charter, or any of its subsidiaries, parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your pre-employment or employment relationship with Charter)**[.]

*Id.* ¶ 10, Ex. C at p. 1 (emphasis added).  In addition, the Solution Channel Agreement clearly states that "[t]his Agreement will be governed by the Federal Arbitration Act."  *Id*. at p. 5.

### 3.   The Agreement Requires Plaintiffs to Arbitrate Their Claims on an Individual Basis.

The Solution Channel Agreement provides that Plaintiff must pursue any claims in arbitration solely on an <u>individual basis</u>, and not on a class action basis:

**Individual Claims Limitation and Representative, Collective, and Class Action Waiver.** You and Charter agree that **both**

5

> **parties may only bring claims against the other party in their
> individual capacity and not as a plaintiff or class member in
> any purported class or representative proceeding**, whether
> those claims are covered claims under Section B, or excluded
> claims under Section C. Additionally, the arbitrator shall not be
> permitted to order consolidation of claims or a representative,
> class, or collective, arbitration.

*Id.* ¶ 10, Ex. C at p. 2 (emphasis added).

### 4.  Plaintiffs Had 30 Days to Opt Out of the Agreement, But Chose Not To Do So.

Plaintiffs were provided 30 days to opt out of the Solution Channel Agreement and were provided with ample information regarding how to do so.  *See* Knapper Decls. I & II, ¶¶ 8, 11-16.  A link to the Solution Channel web page was included in the Solution Channel Announcement, and employees had access to the web page through Charter's intranet site.  *Id.* ¶ 9.  The Solution Channel web page included the following instructions on how to opt-out of the program:

> **Opting Out of Solution Channel**
>
> If you do not opt out of Solution Channel within the designated
> time, you will be automatically enrolled in Solution Channel and
> considered to have consented to the terms of the Mutual
> Arbitration Agreement at that time. To opt-out of Solution
> Channel, please **click here**. In the new window that will open,
> click Main Menu->Self-Service->Solution Channel.

*Id.* ¶ 11.

Employees who wished to opt out of the program could click the link and be routed to a web page at which they could opt out of the program.  *Id.*  Employees opted out of the program by checking a box next to the phrase, "I want to opt out of Solution Channel," entering their name in an adjacent text field, and clicking "SAVE."  *Id.* ¶¶ 13-14.  Employees had the option of printing this page for their records.  *Id.* ¶ 14.

Plaintiffs did not opt out of the Solution Channel Agreement. *Id.* ¶¶ 19-21. Accordingly, they are both contractually bound to arbitrate the claims they have brought against Defendants on an individual basis.

**B.      Plaintiffs Refused to Arbitrate Their Claims.**

Notwithstanding their express agreement to submit "any dispute" related to their employment to arbitration, Plaintiffs filed this amended class action complaint alleging four causes of action against Charter: (1) failure to pay for all off the clock hours worked; (2) failure to pay overtime on non-discretionary bonuses; (3) failure to pay wages; and (4) failure to pay for overtime. Am. Compl. ¶¶ 1-80 (Dkt. No. 23). Plaintiffs refused to abide by the terms of the Solution Channel Agreement by filing this action. Plaintiffs subsequently declined to stipulate to arbitration prior to the filing of this motion.

Because Plaintiffs' claims fall expressly within the terms of the arbitration agreement to which they consented, Defendants hereby move this Court for an order: (1) compelling Plaintiffs to submit their claims on an individual basis to binding arbitration in accordance with the Solution Channel Agreement; and (2) dismissing the action.

## ARGUMENT

**A.      The Enforcement of the Solution Channel Agreement Is Required Under the Federal Arbitration Act ("FAA").**

The Federal Arbitration Act (the "FAA") "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). Pursuant to the FAA, 9 U.S.C. §§ 1-16, the Court must compel Plaintiffs to individually arbitrate their claims in

this action because: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of the Agreement; and (3) Plaintiffs have refused to arbitrate in accordance with the Agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006); *Ineman v. Kohl's Corp.*, No. 14-cv-398-wmc, 2015 WL 1399052, at *3 (W.D. Wis. Mar. 26, 2015); *Villalobos v. EZCorp.*, No. 12-cv-852-slc, 2013 WL 3732875, at *1 (W.D. Wis. July 15, 2013).

Further, the FAA establishes "a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp., v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  The policy in favor of arbitration heavily supports arbitration of claims like those alleged in Plaintiffs' Amended Complaint, so much so that it imposes the burden of proof on the party opposing arbitration.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. at 91; *see also Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002).  The "party resisting arbitration [also] bears the burden of proving that the claims at issue are unsuitable for arbitration[,]" *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91 (2000), with "any doubts . . . resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  If the party resisting arbitration cannot meet its burden, the FAA "leaves no place for the exercise of discretion by a district court"; instead, it requires that parties be ordered to arbitrate disputes covered by a valid agreement to arbitrate.  *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.  Once the parties are ordered to arbitration, the FAA provides for a stay of all proceedings pending compliance.  9 U.S.C. § 3.

As demonstrated below, Plaintiffs entered into a written agreement governed by the FAA which expressly require individual arbitration, and they are bound by such agreement. Accordingly, the Court should stay this action in favor of individual arbitration or, in the alternative, dismiss this action subject to reopening upon good cause shown.

### B.    The FAA Governs the Solution Channel Agreement.

Here, the application of the FAA to the Agreement entered into by Plaintiffs is clear.  The Solution Channel Agreement explicitly states that the agreement is "governed by the Federal Arbitration Act."  Knapper Decls. I & II, Ex. C at p. 5.

Further, even if the Agreement were silent about the applicability of the FAA, the agreement would still be subject to the FAA because Charter is unquestionably engaged in interstate commerce as an out-of-state company employing Tennessee and Wisconsin residents. *See* Am. Compl. (Dkt. No. 23).  The FAA applies to any contract "evidencing a transaction involving commerce," which has been interpreted as "bring[ing] within the FAA's scope all contracts within the Congress' commerce power . . . ."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-14 (2001); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (stating FAA's use of term "involving commerce" signals "the broadest permissible exercise of Congress' Commerce Clause power" and "encompasses a wider range of transactions than those actually 'in commerce'").  Accordingly, the FAA governs this arbitration agreement.

### C.    The Solution Channel Agreement Encompasses All of Plaintiffs' Claims.

On its face, the Solution Channel Agreement covers all of Plaintiffs' employment claims. Pursuant to the express terms of the Solution Channel Agreement, Plaintiffs agreed to resolve "any dispute arising out of or relating to [their] pre-employment application and/or employment with Charter or the termination of that relationship" through binding individual arbitration. Knapper Decls. I & II, ¶ 10, Ex. C at p.1.  Plaintiffs also specifically agreed to individually arbitrate "wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage

statements, claims for reimbursement of expenses)," which are precisely the type of claims Plaintiffs have brought on a class-wide basis in this Court. *Id*

Plaintiffs' Amended Complaint alleges claims that are squarely within the scope of the Solution Channel Agreement. Plaintiffs' allegations arise directly from their employment with Charter, including its alleged failure to pay for all off the clock hours worked, failure to pay overtime on non-discretionary bonuses, and other violations of the Wisconsin wage payment and overtime laws. Am. Compl. ¶¶ 1-80 (Dkt. No. 23). Thus, it cannot be disputed that the Agreement encompasses Plaintiffs' claims against Charter.

Moreover, even if there could be any doubt as to this point, such doubt must be resolved in favor of arbitration. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (doubts as to whether an asserted dispute is covered by an arbitration clause "should be resolved in favor of coverage") (internal quotation marks omitted); *Moses H. Cone*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Further, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quotations omitted). In fact, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses. H. Cone*, 460 U.S. at 22.

### D. The Solution Channel Agreement Is Valid and Enforceable.

Since "arbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960), the existence of a valid arbitration agreement is determined under generally applicable state law on contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Druco Rest., Inc., v. Steak N Shake Enters., Inc.*, 765 F.3d

776, 781 (7th Cir. 2014). The general rule in Wisconsin is to "enforce contracts deliberately made by the parties rather than set them aside." *Midwest Neurosciences Associates, LLC v. Great Lakes Neurosurgical Associates, LLC*, 2018 WI 112, ¶ 39, 920 N.W.2d 767 (quoting *Baierl v. McTaggart*, 2001 WI 107, ¶ 12, 245 Wis.2d 632, 629 N.W.2d 277).

Wisconsin's public policy is equally as strongly in favor of arbitration agreements as the federal policy. *See, e.g., Meyer v. Classified Ins. Corp. of Wisconsin*, 179 Wis. 2d 386, 507 N.W.2d 149 (Ct. App. 1993) (policy is to encourage arbitration as an alternative to litigation); *Manu-Tronics, Inc. v. Effective Mgmt. Sys., Inc.*, 163 Wis. 2d 304, 311, 471 N.W.2d 263 (Ct. App. 1991) ("The sensible policy of this state is to promote arbitration as a viable and valuable form of alternative dispute resolution."). Under Wisconsin law, agreements to arbitrate should be "generously construed." *Hunt v. Moore Brothers, Inc.*, 861 F.3d 655, 659 (7th Cir. 2017) (citing *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 298 (2010)), such that the court should "resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Mason Cos. v. DAZ Sys., Inc.*, No. 12-cv-547-slc, 2013 WL 154222, at *3 (W.D. Wis. Jan. 15, 2013) (internal citations omitted).

Moreover, arbitration agreements governed by the FAA, such as those at issue here, are presumed to be valid and enforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626-27 (1985). Plaintiffs bear the burden of proving otherwise and cannot do so here. *Green Tree Fin. Corp.-Alabama*, 531 U.S. at 92.

### 1.    Plaintiffs Consented to Be Bound by the Solution Channel Agreement.

The acceptance of an arbitration agreement, like any contract, may be express or implied. *See Carroll v. Stryker Corp.*, 670 F. Supp. 2d 891, 898 (W.D. Wis. 2009), *aff'd*, 658 F.3d 675

(7th Cir. 2011).  In the employment context, an employee's continued employment when the arbitration agreement is a condition of such an employment manifests the employee's consent to arbitrate.  *See Tinder v. Pinkerton Security*, 305 F.3d 728, 736 (7th Cir. 2002) (enforcing the arbitration agreement and finding adequate consideration where an employee continued her at-will employment past the effective date of an arbitration policy and the employer agreed to bind itself to the arbitration policy); *Michalski*, 177 F.3d at 636 (finding that under Wisconsin contract law, an employee's signed receipt of arbitration policy materials evidence that the employee who does not opt out is bound by the mutual promise contained in those materials); *see also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 368 (7th Cir. 1999) (holding that arbitration agreement was supported by adequate consideration because employee signed in exchange for employer's promise to employ her and the agreement bound both parties).

Courts routinely enforce arbitration agreements that provide opt out procedures similar to the process Charter employed when rolling out the Solution Channel Agreement and program. *See Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, No. 17-2036, 2019 WL 211418, at *8 (1st Cir. Jan. 16, 2019) (affirming order compelling arbitration where employee failed to opt out of arbitration agreement despite being informed via email that she had the opportunity to opt out); *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.,* No. 17 CV 1542, 2018 WL 2933608, at *6 (N.D. Ill. June 12, 2018) (upholding an arbitration agreement that was unilaterally imposed through a user agreement where users were informed via email of the agreement and had the opportunity to opt out of the arbitration provision, without repercussions, through a mechanism contained in the announcement email) (citing *Kilgore v. KeyBank. Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)); *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir. 1999) ("It does not follow that this court would invalidate an arbitration agreement

12

such as this one [with an opt-out provision], when we have previously held that a nonoptional, mandatory arbitration agreement is valid."); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-2000 (9th Cir. 2002) (affirming grant of motion to compel arbitration where plaintiff-employee had 30 days to opt out of the defendant-employer's arbitration program by mailing in a simple form because he was given a "meaningful opportunity to opt out" and "ample opportunity to investigate any provisions he did not understand" before deciding whether to opt out of the arbitration program).

Here, Plaintiffs consented to individually arbitrate all employment-related disputes with Charter by declining to opt out and continuing their employment with Charter, and thereby, entering into the Solution Channel Agreement. Plaintiffs received the Solution Channel Announcement, which clearly explained the contours of the program, at their company email addresses.[3] Knapper Decls I & II. ¶ 7, Ex. A. The Solution Channel Announcement clearly stated that, if employees did not "opt out of participating in Solution Channel within the next 30 days," that they would be enrolled in the program and would "waive the right to initiate or participate in court litigation…involving a covered claim. *Id.* ¶ 7, Ex. A at p. 2. The choice to opt out of Solution Channel was emphasized to Plaintiffs and other employees in at least three other ways: (1) the Solution Channel web page on the Company-wide intranet site, which stated

---

[3] Even if Plaintiffs were to argue that they did not receive the Solution Channel Announcement, this argument would be contrary to general principles of contract law. *See Friends for Health*, 2018 WL 2933608, at *6 ("According to the mailbox rule, which the Seventh Circuit extends to emails,'[a] presumption exists that [the email was] properly sent, received, and read.'") (citing *Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013)); *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476 (7th Cir. 2009) ("[I]t is well-established that evidence of proper mailing raises a rebuttable presumption of delivery.") (citing *Vincent v. City Colls. Of Chi.*, 485 F.3d 919, 922-23 (7th Cir. 2007); *Easley v. Dewitt,* No. 06C0712, 2009 WL 637167, at *1 (E.D. Wis. Mar. 10, 2009) ("[D]ocuments that have been properly mailed are presumed received.") (citing *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002)).

that "participation in Solution Channel means that [Plaintiffs] and Charter agree to waive any right to participate in court litigation involving covered disputes and to arbitrate those disputes;" (2) the Solution Channel Agreement itself, which stated in bold text that by electing not to opt out Plaintiffs "**AGREE[D] TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN [PLAINTIFFS] AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION**;" (3) the PeopleSoft Solution Channel Page, which stated that by not opting out of Solution Channel, employees were "SPECIFICALLY CONSENTING TO PARTICIPATION IN SOLUTION CHANNEL." *Id*., Ex. B-D.

Plaintiffs had a "meaningful choice about whether to agree to arbitration." *See Lathan v. Uber Technologies, Inc.*, 266 F. Supp. 3d 1170, 1174 (E.D. Wis. 2017) (finding that plaintiff had meaningful choice when "he had the opportunity to opt out of arbitration altogether, unilaterally, and without consequence"). Charter provided 30 days—which courts have consistently found to be ample time—for Plaintiffs to make the decision whether to opt out of the Solution Channel Agreement and program. Charter provided Plaintiffs with ample information to enable them to make an informed choice by explaining the impact and conditions of the program in plain and explicit language. Charter provided Plaintiffs with clear instructions regarding how to opt out of the program, which could be done at any time during the 30-day period by simply logging on to a web page on the company intranet, typing their name, and checking a box. Plaintiffs simply chose not to opt out.

Plaintiffs did not opt out of the Solution Channel Agreement and continued their employment with Charter, which manifested their assent to be bound by the plain terms of that agreement. *See* Knapper Decls. I & II, ¶ 21. They received clear and explicit instructions regarding how to opt out of the program if they wished. *Id*. ¶¶ 7-14. They simply had to check a

14

box and enter their name in order to opt out of the program.  *Id*. ¶ 14.  Plaintiffs elected not to do

so, and instead, consented to participate in Solution Channel.  They are bound by their decision

not to opt out and cannot now avoid their obligations under the Solution Channel Agreement.

### 2. The Arbitration Agreement Is Not Unconscionable.

The burden rests entirely with Plaintiffs to establish both procedural and substantive

unconscionability.  *Green Tree Fin. Corp*., 531 U.S. at 92; *In re First Phoenix-Weston, LLC,* 575

B.R. 828, 843 (Bankr. W.D. Wis. 2017) ("The party claiming a contract is unconscionable has

the burden to prove facts sufficient to support that contention.").  The court must weigh the

factors for procedural and substantive unconscionability on a case-by-case basis.  *Viallobos*,

2013 WL 3732875, at *2 (citing *Wis. Auto Title Loans v. Jones,* 2006 WI 53, ¶¶ 29, 33, 290 Wis.

2d 514, 714 N.W.2d 155).  Further, this court should not consider a class action waiver as a

factor in a broader unconscionability analysis.  *See id.* at *6 (relying on *AT&T Mobility v.

Concepcion*, 563 U.S. 333, 351 (2013), to "decline to consider the class action waiver as a factor

tending to establish the unconscionability of the arbitration provision"); *see also Clemins v. GE

Money Bank,* No. 11-cv-00210, 2012 WL 5868659, at *5 (E.D. Wis. 2012) (finding that

Wisconsin's doctrine of unconscionability cannot be used to strike class-action waivers from

contracts).  In this case, there simply is no basis for finding that the Solution Channel Agreement

is unconscionable.

### a. The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability factors include "age, education, intelligence, business

acumen and experience, relative bargaining power, who drafted the contract, whether the terms

were explained to the weaker party, whether alterations in the printed terms were possible."

*Villalobos*, 2013 WL 3732875, at *2 (internal quotations and citations omitted).  These factors weigh against a finding of procedural unconscionability here.

The Solution Channel Agreement is written in plain language and clearly explains that both parties are agreeing to arbitrate their claims rather than pursue them in court.  For instance, the Solution Channel itself articulates all applicable provisions and requirements in clear, unambiguous language broken down into sections with understandable and specific headings, such as: "Arbitration Requirement," "Covered Claims," and "Conduct of Arbitration."  Knapper Decls. I & II, Ex. C.  Employees were also provided with a link the Solution Channel Guidelines, which provided additional information on Solution Channel Program and clearly described the opt-out period and process, in the Solution Channel Announcement and on the Solution Channel web page.  *Id.* ¶¶ 8-9, Ex. A-B.  Therefore, Plaintiffs, who had been with Charter for a number of years prior to the implementation of the Agreement, *see* Am. Compl. ¶¶ 6, 11 (Dkt. No. 23), and had access to the relevant materials, Knapper Decls. I & II, ¶¶ 18-21, had the intelligence, experience and explanations necessary to establish that no procedural unconscionability exists here.

Moreover, the relative bargaining power of the parties is equal.  Although Charter drafted the contract, Plaintiffs were under no obligation and could have chosen not to participate in Solution Channel by opting out of the program.  *See id.* ¶¶ 11-13.  Thus, to the extent Plaintiffs attempt to avoid their contractual obligations on this basis, this argument is a nonstarter.

**b.      The Agreement Is Not Substantively Unconscionable.**

Likewise, there is no evidence of substantive unconscionability here.  Substantive unconscionability "refers to whether the contract is unreasonably favorable to the more power party."  *Fry v. Phillips & Co. Sec.,* 2013 WI App 1, ¶ 13, 345 Wis. 2d 398, 824 N.W.2d 928

16

(unpub.) (citing *Wis. Auto Title Loans*, 2006 WI 53, ¶ 36); *see also Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 27, 259 Wis. 2d 587, 609, 657 N.W.2d 411 ("substantive unconscionability 'pertains to the reasonableness of the contract terms themselves'") (citations omitted).

Here, the Solution Channel Agreement is reasonable because it is not a contract of adhesion nor is the Agreement unreasonably one-sided.  "A contract of adhesion is generally found under circumstances in which a party has, in effect, no choice but to accept the contract offered." *Deminsky*, 2003 WI 15, ¶ 31.  As previously stated, participation in Solution Channel was voluntary and Plaintiffs could have chosen to opt out of the Agreement.  *See* Knapper Decls. I & II, ¶¶ 11-13.  Further, an arbitration agreement is not unreasonably favorable to an employer if it binds both the employer and employee equally.  *See Lathan*, 266 F. Supp. 3d at 1174 (citing *Scaffidi v. Fiserv, Inc.* 218 F. App'x 519, 521 (7th Cir. 2007) ("explaining that 'mutuality of obligations…exist[s]' where both parties are 'equally bound to arbitrate any … claims that are covered by the agreement'")).  As in *Lathan*, the Solution Channel Agreement is mutually binding, rendering it substantively conscionable.

Furthermore, the Solution Channel Agreement is mutual and allows for the same rights and remedies in a private, neutral forum that would be afforded to Plaintiffs in court. Accordingly, the Agreement is conscionable and must be enforced.

### c.     The Court Should Sever Any Unconscionable Term.

Should the Court conclude that any term of the Solution Channel Agreement is in fact unconscionable, the Court may sever the term of the agreement and enforce the remainder of the agreement.  *See* Uniform Commercial Code § 402.302(1). Courts may sever invalid clauses in otherwise valid arbitration agreements by considering "whether the unlawful provision is

essential to the agreement as a whole and whether multiple unlawful provisions support the conclusion that the drafter of the agreement was attempting to undermine the other party's rights." *Herrington v. Waterstone Mortg. Corp.*, No. 11-cv-779-bbc, 2012 WL 1242318, at *7 (W.D. Wis. Mar. 16, 2012) (citations omitted).

The Solution Channel Agreement contains a severability provision which expressly provides that, if any portion of the agreement is deemed invalid or unenforceable, "the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law." Knapper Decls. I & II, ¶ 10, Ex. C, at p. 4.

**E.     Plaintiffs' Class Claims Must Be Dismissed.**

The Court must dismiss Plaintiffs' class claims and order the parties to arbitrate all four causes of action in Plaintiffs' Amended Complaint solely on an individual basis.  Class action waivers are enforceable.  *Epic Sys. Corp.*, 138 S. Ct. at 1632 (upholding the enforceability of arbitration agreements containing class and collective action waivers of wage and hour disputes); *see also AT&T Mobility*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."); *Villalobos,* 2013 WL 3732875, at *6.  Further, arbitration agreements must be enforced as written.  *Epic Sys. Corp.*, 138 S. Ct. at 1632.

Here, the Solution Channel Agreement contains a valid class action waiver.  The Agreement contains an "Individual Claims Limitation and Representative, Collective, and Class Action Waiver," which provides in part: "[Plaintiffs] agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding[.]"  Knapper Decls. I & II, Ex. C, at p. 2.

18

Thus, Plaintiffs are legally bound to arbitrate their employment claims against Charter solely on an individual basis.

### F.   Plaintiffs Refused to Stipulate to this Matter Proceeding in Arbitration.

Prior to filing this motion, counsel for Defendants provided a copy of the Solution Channel Agreement and related program documents, the record of Plaintiff Moorman's and Plaintiff Dymond's electronic acknowledgment, and copies of previous decisions upholding the Arbitration Agreement to Plaintiffs' counsel and requested that Plaintiffs voluntarily submit the matter to individual arbitration.  To date, Plaintiffs have not agreed to do so.

### G.   This Action Should Be Dismissed Subject to Reopening Upon Good Cause Shown.

The FAA generally provides for a stay of judicial proceedings pending arbitration when such proceedings involve issues subject to a valid arbitration agreement.  9 U.S.C. § 3.  While this status may potentially be appropriate for Plaintiff Dymond, who alleges he is a Wisconsin resident, as Defendants pointed out in their Motion to Transfer Venue, Plaintiff Moorman is a Tennessee resident.  At least as to Moorman, complete dismissal is appropriate.  *See Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606–07 (7th Cir. 2003) (dismissal appropriate where venue is improper and plaintiff is subject to arbitration).

In any event, because all of the Plaintiffs' claims are subject to binding individual arbitration, the Court should dismiss this action, subject to reopening upon good cause shown. "Although the Seventh Circuit has yet to hold outright that dismissal of a suit is appropriate when all claims are subject to arbitration, it has affirmed district courts' dismissals of suits when a court finds that all of the claims are arbitrable." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013) (citing *Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir.

2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002)).  In accordance with that trend, this Court has previously found it appropriate to "dismiss [an] action subject to reopening upon good cause shown for purposes of confirmation of or challenges to the arbitration award." *Ineman v. Kohl's Corp.*, 2015 WL 1399052, at *5.

Because Defendants have established that the Solution Channel Agreement is valid and enforceable, and encompasses the entire lawsuit, the Court should dismiss this action subject to reopening upon good cause shown.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should compel arbitration of Plaintiffs' individual claims and dismiss the action.

Dated:  January 18, 2019                    Respectfully Submitted,


                                            GODFREY & KAHN, S.C.

                                            By:  _s/ Allison W. Reimann_____
                                            Kendall W. Harrison
                                            State Bar No. 1023438
                                            Allison W. Reimann
                                            State Bar No. 1107864
                                            One East Main Street, Suite 500
                                            P.O. Box 2719
                                            Madison, WI 53701-2719
                                            (608) 257-3911
                                            kharrison@gklaw.com
                                            areimann@gklaw.com

                                            SIDLEY AUSTIN LLP

                                            Max Fischer (*pro hac vice*)
                                            555 West Fifth St., Suite 4000
                                            Los Angeles, CA 90013
                                            Tel: (213) 896-6000
                                            Fax: (213) 896-6600
                                            mfischer@sidley.com

                                            Margaret Hope Allen (*pro hac vice*)
                                            2021 McKinney Avenue, Suite 2000
                                            Dallas, Texas 75201
                                            Tel: (214) 981-3300
                                            Fax: (214) 981-3400
                                            margaret.allen@sidley.com


                                            **ATTORNEYS FOR DEFENDANTS**

20065495.2

21