# Exhibit 1

NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN CASTORENA and EMMANUEL SANCHEZ, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC, a Delaware limited liability company doing business in California; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 2:18-cv-07981-JFW-KS<br><br>Hon. John F. Walter<br><br>**STATEMENT OF DECISION GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

## I. INTRODUCTION

On November 26, 2018, Defendant Charter Communications, LLC ("Defendant") filed a Motion to Compel Plaintiff Martin Castorena's and Plaintiff Emmanuel Sanchez's (collectively, "Plaintiffs") individual claims to private arbitration and dismiss Plaintiffs' class claims ("Motion"). Defendant's Motion is based on Plaintiff's agreement to arbitrate all disputes arising out of their employment with Defendant. Motion, pp. 3-5. Plaintiffs filed an Opposition on November 27, 2018. On November 29, 2018, Defendant filed a Reply.[1] The Court hereby **GRANTS** Defendant's Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a national telecommunications company that provides telephone, internet, and cable services. Plaintiffs were employed by Defendant as Fulfillment Support Technicians ("FSTs") at its Long Beach facility. Plaintiff Castorena was employed by Defendant from May 15, 2017 through June 4, 2018, and Plaintiff Sanchez was employed by Defendant from March 2016 until July 5, 2018. Plaintiffs assert the following claims against Defendant on behalf of themselves and others similarly situated: (1) Failure to Pay Regular and Overtime Wages (Labor Code §§ 510, 1194, 1198); (2) Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.2, 1197); (3) Failure to Pay Wages (Labor Code § 204); (4) Waiting Time Penalties (Labor Code §§ 201-203); (5) Failure to Provide Accurate Itemized Wage Statements (Labor Code § 226); (6) Fraudulent Inducement; (7) Fraud by False Promise; (8) Promissory Estoppel; (9) Unfair Business Practices (Business & Professions Code §§ 17200 *et seq.*) Complaint, Docket No. 10-3.

---

[1] Defendant's Request for Judicial Notice in Support of Motion to Compel Arbitration, filed December 11, 2018 (Docket No. 39), is improper and untimely and, thus, it is **DENIED**.

1

### A.   Plaintiffs Received The Arbitration Agreement.

Defendant launched its dispute resolution program, Solution Channel, on October 6, 2017. November 26, 2018 Declarations of Tammie Knapper ("Knapper Decls. I and II"), ¶ 5. Defendant announced the launch of Solution Channel to its employees via an email sent by the company's Vice President of Human Resources on October 6, 2017 (the "Solution Channel Announcement"). *Id.*, ¶ 6 and Exh. A. Employees, including Plaintiffs, received the Solution Channel Announcement at their company email addresses. *Id.* The Solution Channel Announcement clearly explained that "by participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) . . . Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled. *Id.*, ¶ 8 and Exh. A. Instructions for opting out of *Solution Channel* are also located on Panorama." *Id.*, ¶ 11 and Exh. A.

Plaintiffs deny that they received or read the Solution Channel Announcement email, and therefore, claim that they could not have accepted the agreement to arbitrate. Opposition, pp. 6-7. Plaintiffs assert that they did not have remote access to their company email addresses and did not have regular access to their company email accounts. *Id*. They also assert that they were never instructed to regularly check their company email. *Id.* Defendant's witnesses proffered credible evidence to the contrary. Defendant demonstrated that Plaintiffs did have remote access to their company email accounts, and did use their company email accounts. November 29, 2018 Declaration of Dan Vasey ("Vasey Decl."), ¶¶ 3-5 and Exh. A-B. Defendant's evidence also demonstrates that Plaintiffs sent hundreds of emails during their employment, including in the immediate hours and days following the Solution Channel Announcement. *Id*. Defendant's Employee Handbook and Code of Conduct also contained provisions informing Plaintiffs that they were expected to regularly monitor their company email accounts. *Id., * Exh. C-D.

**B. Plaintiffs Did Not Opt Out of The Arbitration Agreement And Continued Their Employment With Defendant.**

Plaintiffs were provided 30 days to opt out of the Solution Channel Agreement and were provided with clear and precise information and instructions regarding how to do so. Knapper Decls. I and II, ¶¶ 8 and 11-15. Specifically, a link to the Solution Channel web page was included in the Solution Channel Announcement, and employees had access to that web page through Charter's intranet site. *Id*. Employees who wanted to opt out of the program could do so at an internal web page by checking a box next to the phrase, "I want to opt out of Solution Channel," entering their name in an adjacent text field, and clicking "SAVE." *Id.* It is undisputed that Plaintiffs did not opt out of the Solution Channel Agreement and that Plaintiffs continued their employment with Defendant for several months after the expiration of the opt out period. *Id*., ¶¶ 19-21.

**C. The Arbitration Agreement And Its Terms.**

The plain language of the Arbitration Agreement requires Plaintiffs to individually arbitrate all disputes arising out of their employment with Charter. *See* Knapper Decls. I and II, Ex. C, p. 1. The Arbitration Agreement provides, in relevant part:

> You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship...must be resolved through binding arbitration by a private and neutral arbitrator[.]
>
> ****
>
> You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement: all disputes, claims, and

3

controversies that could be asserted in court or before an administrative agency…including without limitation…wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses)[.]

*Id*. at pp. 1-2. The Arbitration Agreement also provides that any challenges to the validity, enforceability or breach of the Arbitration Agreement must be resolved in arbitration. *Id.* at pp. 1. The Arbitration Agreement contains a class action waiver, which provides that Plaintiffs must pursue any claims in arbitration solely on an individual basis, and not on a class basis. *Id*. at pp. 1-2. The Arbitration Agreement states that it shall be "governed by the Federal Arbitration Act." *Id*. at pp. 5.

### D. Plaintiff Castorena Entered Into A Predecessor Agreement.

Prior to entering into the Solution Channel Arbitration Agreement, Plaintiff Castorena entered into a prior agreement to arbitrate when he applied for and accepted the online offer for his employment with the company in April of 2017. November 26, 2018 Declaration of Chance Cassidy ("Cassidy Decl."), ¶¶ 16-17. Plaintiff Castorena electronically accepted and acknowledged the predecessor agreement (the "JAMS Agreement"), which also covers all employment-related disputes and contains a class action waiver. *Id.*, Exh. B, pp 1-2. Because the Court concludes that the Solution Channel Arbitration Agreement is valid and enforceable, the Court need not discuss the enforceability of the JAMS Agreement. However, if the Solution Channel Arbitration Agreement was determined to be invalid, the Court concludes that the JAMS Agreement would still bar Plaintiff Castorena's individual and class claims.

### III. LEGAL STANDARD

The Federal Arbitration Act (the "FAA") "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

4

(quoting 9 U.S.C. § 2). The FAA establishes "a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp., v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Thus, under the FAA, the Court's role is limited to determining: (1) whether the arbitration agreement is valid and enforceable; and (2) whether the claims asserted are within the purview of the arbitration agreement.[2] *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The party opposing arbitration bears the burden of showing that the agreement is not enforceable." *Oakley v. GMRI, Inc.*, No. CV-13-042-RHW, 2013 WL 5433350, at *2 (E.D. Wash. Sept. 27, 2013); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The "party resisting arbitration [also] bears the burden of proving that the claims at issue are unsuitable for arbitration[,]" *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91 (2000), with "any doubts . . . resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. If the party resisting arbitration cannot meet its burden, the Court must order the parties to arbitrate disputes covered by a valid agreement to arbitrate. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

## IV. DISCUSSION

### A. Defendant Did Not Waive Its Right To Arbitrate.

"A determination of whether 'the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.' Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (internal citations omitted). In the Ninth

---

[2] The FAA applies here given that Defendant is engaged in interstate commerce as an out-of-state company employing California residents and the Arbitration Agreement itself provides that it will be "governed by the Federal Arbitration Act." *See* Defendant's Notice of Removal (Dkt. No. 1, pp. 7); Plaintiffs' Complaint (Dkt. No. 10-3). *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001).

5

Circuit, a party can waive its right to compel arbitration only after an extended period of silence and delay and engaging in other conduct inconsistent with an intent to arbitrate. *Martin*, 829 F.3d at 1125. Plaintiffs must also show prejudice to prove waiver. *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978); *see also Martin*, 829 F.3d at 1126.

Plaintiffs devote the majority of their Opposition to their contention that Defendant waived its right to compel arbitration due to delay. Specifically, Plaintiffs argue that Defendant delayed by removing this action to federal court; meeting and conferring regarding case management, scheduling, and discovery issues; making multiple filings in federal court; and waiting over three months after the removal to bring a motion to compel arbitration. Opposition, pp. 9-11. The Court concludes that Defendant did not act inconsistently with its right to compel arbitration and that Defendant was justified in refusing to participate in any activity that might be considered inconsistent with that right. Defendant's removal of the case to federal court is insufficient to constitute a waiver. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1126 (9th Cir. 2008) (no waiver where defendant moved to compel after removing case to federal court); *Morvant v. PF. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) (noting "removal prior to compelling arbitration is neither uncommon nor inconsistent with the right to arbitrate"). In addition, Defendant's "delay" in bringing its Motion was due in large part to the parties' informal attempts to resolve the arbitration issue by stipulation, including Plaintiffs' review of two arbitration agreements and supporting documents. November 29, 2018 Declaration of Max C. Fischer ("Fischer Decl."), Exh. A-B.

Plaintiffs have also failed to demonstrate they have suffered any prejudice. Plaintiffs' argument that the costs they expended in meeting and conferring and filing joint stipulations constitute prejudice borders on the frivolous. Costs and expenses incurred in early litigation before a motion to compel "do not support a finding of waiver or prejudice." *Cox*, 533 F.3d at 1126. If anything, these costs are "self-

inflicted wounds" and cannot support their claim of wavier. *Martin*, 829 F.3d at 1126 ("To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in . . . court contrary to the provisions of an arbitration agreement.") Thus, Plaintiffs have failed to meet their burden of proving waiver in this case.

### B. The Arbitration Agreement Is Valid And Enforceable.

"[A]rbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960), and thus, the existence of a valid arbitration agreement is determined under generally applicable state law on contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Armendariz v. Foundation Health Psycare Services, Inc.*, 24 Cal. 4th 83, 98 (2000) ("under both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). California's public policy is equally as strongly in favor of arbitration agreements as the federal policy. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1079 (2003); *Madden*, 17 Cal. 3d at 706-07 (1976) ("[A]rbitration has become an accepted and favored method of resolving disputes . . . praised by the courts as an expeditious and economical method of relieving overburdened civil calendars.")

The acceptance of an arbitration agreement may be express or implied. *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 236 (2012). For example, an employee's decision to continue his or her employment when an arbitration agreement is a condition of that employment constitutes acceptance of the arbitration agreement. *See e.g. Craig*, 84 Cal. App. 4th at 420 (finding an enforceable agreement to arbitrate where the employer mailed information regarding the ADR program to the employee's home, and the employee continued to work for the employer, which constituted acceptance); *Romero v. GE Betz, Inc.*, No. CV 16-1356 FMO (JCX), 2016 WL 9138054, at *4 (C.D. Cal. June 28, 2016) (granting motion to compel arbitration where plaintiff received a copy of the

7

arbitration procedure as part of a training course and continued his employment with defendant and thereby impliedly accepted the arbitration agreement).

In this case, Plaintiffs consented to individually arbitrate all employment-related disputes with Defendant when they failed to opt out and continued their employment with Defendant. Employees were clearly instructed that if they did not "opt out of participating in Solution Channel within the next 30 days," they would be enrolled in the program and would "waive the right to initiate or participate in court litigation…involving a covered claim." Knapper Decl. I and II, ¶ 7, Exh. A, p. 2. Apart from the announcement, the ability to opt out and the consequences of electing not to do so was communicated to Plaintiffs in several other ways, including in the Arbitration Agreement itself and the program's web page on the Company-wide intranet. *Id.*, Exh. A-D. Contrary to Plaintiffs' assertion, they were given more than a "meaningful opportunity" to opt out of the Arbitration Agreement, and simply chose not to do so.

The Court finds Plaintiffs' argument that they allegedly did not read or otherwise were not aware of the Solution Channel program and Arbitration Agreement unpersuasive. Opposition, p. 6. Plaintiffs' claims that they did not use their email accounts and had limited access to those accounts, is belied by the overwhelming evidence demonstrating that they sent hundreds of emails on their accounts, including on the days immediately following the Solution Channel announcement using mobile devices with remote access. Vasey Decl., ¶¶ 3-5 and Exh. A-B. The evidence also demonstrates, contrary to their sworn declarations, that each Plaintiff had remote access to their email accounts via a handheld device and sent and received emails using that device. *Id.*

Plaintiffs' failure to read their company email does not negate the sufficiency of the notice provided by Defendant announcing the roll-out of the arbitration program. *Aquino v. Toyota Motor Sales U.S., Inc.*, No. 15-cv-05281-JST, at *6 (N.D. Cal. May. 31, 2016); *see also Lovig v. Best Buy Stores LP*, No. 18-cv-02807-PJH, at *9 (N.D.

8

Cal. Aug. 28, 2018). Plaintiffs' argument ignores the mailbox rule, which provides that "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001). A simple denial of receipt is insufficient to rebut the presumption. *See, e.g.*, *Craig*, 84 Cal. App. 4th at 421 (upholding order compelling arbitration where plaintiff claimed she never received a copy of the arbitration agreement); *Winfrey*, 2016 WL 6666810, at *3 (same); *Hill*, 2014 WL 10100283, at *3 (noting "mere statements of denial are not sufficient").

### 1. The Arbitration Agreement Is Not Procedurally Unconscionable.

Plaintiffs take issue with the standard-form and adhesive nature of the Arbitration Agreement. Opposition, p. 17. However, it is well-established that, absent any additional indication of oppression or surprise, the "degree of procedural unconscionability of an adhesion agreement is low," and accordingly, such agreements will be enforceable so long as there is not a high degree of substantive unconscionability. *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013) ("[The] adhesive aspect of an agreement is not dispositive.")

Plaintiffs also claim that the Solution Channel Announcement was "purposefully misleading," and take issue with Defendant's failure to attach the Arbitration Agreement or a copy of the AAA rules to the announcement email. However, the email was written in plain and unambiguous language: "By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions)." Knapper Decls. I and II, Exh. A. Finally, the Arbitration Agreement was easily accessible to employees at all times on the company-wide intranet site. *Id.* at ¶ 9.

### 2. The Arbitration Agreement Is Not Substantively Unconscionable.

"Substantive unconscionability focuses on the actual terms of the agreement

9

and evaluates whether they create an 'overly harsh' or 'one-sided' result…. Substantive unconscionability 'may take various forms,' but typically is found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification…." *Serpa*, 215 Cal. App. 4th at 703 (internal citations omitted). The Court concludes that the Arbitration Agreement is mutual, and does not contain any one-sided provisions. Instead, it applies broadly to all claims either party has against the other arising from the employment relationship. In addition, the claims excluded from arbitration may be pursued by either party in litigation. The terms of the agreement are balanced: employees are not deprived of the opportunity to conduct discovery and employees are not restricted in the types of remedies they can pursue. Thus, Plaintiffs failed to meet their burden of establishing that the Arbitration Agreement is procedurally and substantively unconscionable. *See Arguelles–Romero v. Superior Court*, 184 Cal. App. 4th 825 (2010) ("It is the plaintiff's burden to introduce sufficient evidence to establish unconscionability.")

### C. The Arbitration Agreement Covers Plaintiffs' Claims.

Plaintiffs' Complaint alleges claims that are squarely within the scope of the Arbitration Agreement. Pursuant to the terms of the Arbitration Agreement, Plaintiffs agreed to resolve "any dispute arising out of or relating to [their] pre-employment application and/or employment with Charter or the termination of that relationship" through binding individual arbitration. Knapper Decls. I & II, ¶ 10 and Exh. C. Plaintiffs also specifically agreed to individually arbitrate "wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses)," which are exactly the type of claims Plaintiffs have brought on a class-wide basis in this Court. *Id.*

### D. Plaintiffs Agreed To Waive Class Claims.

Class action waivers are enforceable under both federal and California law.[3] *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the enforceability of arbitration agreements containing class and collective action waivers of wage and hour disputes); *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 359-60 (2014) (enforcing class waiver and finding that California law to the contrary is preempted by the FAA). In this case, the Court concludes that the Arbitration Agreement contains a valid class action waiver. Specifically, the Arbitration Agreement contains an "Individual Claims Limitation and Representative, Collective, and Class Action Waiver," which provides in part: "[Plaintiffs] agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding[.]" Knapper Decls. I & II, Exh. C, pp. 1-2. Thus, the Court will dismiss Plaintiffs' class claims and will order the parties to arbitrate all nine causes of action alleged in Plaintiffs' Complaint solely on an individual basis.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration in its entirety. The Court hereby **DISMISSES without prejudice** Plaintiffs' class claims. Plaintiffs' remaining claims are ordered to arbitration in accordance with the Arbitration Agreement. This action is **STAYED** pending the outcome of those arbitrations, and the Clerk is ordered to administratively close this case. The parties shall file a joint status report with the Court every 120 days

//

//

//

---

[3] The four-factor analysis under *Gentry v. Superior Court*, 42 Cal.4th 443 (2007) is inapplicable here, as *Gentry* applies to agreements exempted from the FAA entirely.

11

regarding the status of the arbitration proceedings, with the first joint status report due on April 9, 2019.

Date: December 14, 2018

_____
HON. JOHN F. WALTER

12