# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Case No. 18-cv-02133-REB-MEH

MICHAEL SCARPITTI,

    Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,

    Defendant.

---

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

---

**Blackburn, J.**

The matter before me is **Defendant's Motion To Compel Arbitration** [#7],[1] filed August 28, 2018. I grant the motion.

## I. JURISDICTION

I putatively have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

## II. STANDARD OF REVIEW

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" ***Beltran v. AuPairCare, Inc.***, 907 F.3d 1240, (10th Cir. 2018) (quoting ***Howsam v. Dean Witter Reynolds, Inc.***, 537 U.S. 79, 83, 123 S.Ct. 588, 591,154 L.Ed.2d 491 (2002)). Conversely, the court is "require[d] . . . to enforce privately negotiated agreements to arbitrate, like other

---

[1] "[#7]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

contracts, in accordance with their terms." ***Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University***, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

The court's primary task, therefore, is to determine whether the parties agreed to arbitrate their dispute.[2] ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); ***Beltran***, 907 F.3d at 1251. That determination focuses on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. See ***National American Insurance Co. v. SCOR Reinsurance Co.***, 362 F.3d 1288, 1290 (10th Cir. 2004); ***Via Fone, Inc. v. Western Wireless Corp.***, 106 F.Supp.2d 1147, 1150 (D. Kan. 2000). Plaintiff here attacks the arbitration agreement on only the first of these two prongs.

### III. ANALYSIS

This case arises from the termination of plaintiff's employment with defendant on or about May 11, 2018.[3] Plaintiff has brought claims under Colorado law for wrongful termination and intentional infliction of emotional distress. Defendant maintains these claims are subject to arbitration. I concur, and therefore grant defendant's motion.

On October 6, 2017, defendant distributed to all active employees an email bearing the subject line "Charter's Code of Conduct and Employee Handbook." (**Reply**

---

[2] In some cases, the court also may be called on to consider whether any statute or policy renders the claims non-arbitrable. ***Mitsubishi Motors Corp.***, 105 S.Ct. at 3355; ***Williams***, 203 F.3d at 764. As plaintiff presents no argument to this effect, I do not consider the matter further.

[3] The parties dispute whether plaintiff was terminated or resigned. However, that fact is irrelevant for purposes of this motion.

**App.**, Exh. A.) The email informed all non-union employees of defendant's intention to implement a program called "Solution Channel," described as allowing employees "and the company to efficiently resolve covered employment-related legal disputes through binding arbitration." (*Id.*) A hyperlink within the email directed employees to a webpage where they could find a copy of the Solution Channel document. (**See Motion App.**, Exh. A ¶ 9 at 2; Exh. B.)

The document itself describes Solution Channel as the exclusive means of resolving employment-related disputes covered under its terms. Under the heading "Covered and Excluded Claims," the document stated generally:

> All disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), are covered by and must be resolved through Solution Channel, unless expressly excluded below.

(*Id.*, Exh. A at 5.) Included "without limitation" in a specifically denominated list of covered claims were claims for unlawful termination. (*Id.*)

Both the email sent to employees and the Solution Channel document itself also informed recipients they would be enrolled in and subject to the policy unless they opted out of the program within 30 days of implementation. (**Id.**, Exh. A at 3; **Reply App.**, Exh. A.) Otherwise, "participation in Solution Channel is a condition of consideration for employment with" defendant. (**Motion App.**, Exh. A at 3.) In case these provisions were insufficiently explicit, the document confirmed that participants in Solution Channel

3

waived any right "to initiate or pursue a covered claim against [defendant] . . . in a court of law or equity" or " to have a covered claim heard by a court, judge, or jury[.]" (*Id.* at 4.)

Plaintiff maintains the motion must fail because there is no proof he received or reviewed this email. This argument borders on specious, both factually and legally. The affidavit of defendant's Vice President of Human Resources Technology attesting to the fact that plaintiff was included on the distribution list for the email informing employees about Solution Channel is entirely competent to sustain its burden of proof to show the existence of a valid arbitration agreement.[4]

As plaintiff himself recognizes (*see* **Resp.** at 3), the burden thus shifts to him to raise a genuine dispute of material fact as to the making of the agreement, "using evidence comparable to that identified in Fed. R. Civ. P. 56." **Stein v. Burt-Kuni One, LLC**, 396 F.Supp.2d 1211, 1213 (D. Colo. 2005). Nevertheless, he apparently could not manage to commit his suggestion that he did not receive the email to an affidavit or declaration. Yet his mere *ipse dixit* is evidence of nothing. **See Martinez v. TCF National Bank**, 2015 WL 854442 at *2 (D. Colo. Feb. 25, 2015) ("[P]laintiff's assertion that she never received the [arbitration contract] is insufficient to overcome the presumption of delivery.").

Plaintiff's further suggestion that there is no evidence he opened this email or read its contents – another purported "fact" for which he provides no actual evidence – likewise is baseless. Although the Tenth Circuit appears not to have addressed this

---

[4] Nevertheless, defendant's production of the actual email sent to plaintiff removes any doubt as to this question.

issue, numerous federal courts have afforded the same presumption of delivery applicable to mail sent through traditional postal channels to email communications. *See, e.g.*, **Ball v. Kotter**, 723 F.3d 813, 830 (7th Cir. 2013); ***American Boat Co., Inc. v. Unknown Sunken Barge***, 418 F.3d 910, 914 (8th Cir. 2005); ***Gupta v. Morgan Stanley Smith Barney, LLC***, 2018 WL 2130434 at *3 (N.D. Ill. May 9, 2018); ***Johnson v. Harvest Management Sub TRS Corp. – Holiday Retirement***, 2015 WL 5692567 at *3 (S.D. Ind. Sept. 25, 2015); ***Corbin v. Affiliated Computer Services, Inc.***, 2013 WL 3804862 at *6 (M.D. Fla. July 19, 2013); ***Dempster v. Dempster***, 404 F.Supp.2d 445, 449 (E.D.N.Y. 2005). Now well into the second decade of the twenty-first century, in which email has become ubiquitous, I have no hesitancy in adopting this position and acknowledging the presumption that plaintiff received the email. Plaintiff fails utterly to rebut that presumption

      Having received notice of the arbitration agreement, plaintiff's "purported ignorance of the policy, whether willful or otherwise, does not absolve him from being bound by the agreement[.]" ***Morris v. Milgard Manufacturing, Inc.***, 2012 WL 6217387 at *3 (D. Colo. Dec. 13, 2012). ***See also Elsken v. Network Multi–Family Security Corp.***, 49 F.3d 1470, 1473-74 (10th Cir. 1995). His failure to opt out within the time specified while continuing to work for defendant manifested his acceptance of the terms of the agreement. ***See Frymire v. Ampex Corp.***, 61 F.3d 757, 769-70 (10th Cir. 1995) (interpreting Colorado law), ***cert. dismissed***, 116 S.Ct. 1588 (1996); ***Morris***, 2012 WL 6217387 at *3.

Plaintiff does not argue, nor could he, that his claims are not encompassed within the scope of that agreement. His unlawful termination claim is specifically referenced as subject to arbitration. (**Motion App.**, Exh. A at 5.) His intentional infliction of emotional distress claim is plainly "related to" his employment. (*Id.*) Those claims thus both are referable to arbitration. Defendant's motion therefore must be granted.

The Federal Arbitration Act provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action . . ." 9 U.S.C. § 3. I therefore will stay this action. Nevertheless, pursuant to D.C.Colo.LCivR. 41.2, because no matters remain for this court to address while arbitration proceeds, I will administratively close this case, subject to reopening for good cause.

Finally, defendant seeks to recover, under the authority of Fed. R. Civ. P. 54(d)(1), the costs incurred in bringing this motion. Pursuant to the rule, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." **FED. R. CIV. P.** 54(d)(1). The rule thus "codifies a venerable presumption that prevailing parties are entitled to costs." **Marx v. General Revenue Corp**., 568 U.S. 371, 377, 133 S.Ct. 1166, 1172, 185 L.Ed.2d 242 (2013) (footnote omitted). "Notwithstanding this presumption, the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Id.* Nevertheless, if it decides to deny costs, the court must provide a valid reason. **Zeran v. Diamond Broad., Inc**., 203 F.3d 714, 722

(10th Cir. 2000).

I perceive no valid reason for denying defendant its costs in this instance. Defendant indisputably is the prevailing party in this matter, and its success is not partial or qualified. Moreover, defendant has presented evidence demonstrating that, in response to a demand letter received from plaintiff's counsel prior to the filing of this lawsuit (*see* **Motion App.**, Exh. B), defense counsel informed plaintiff's counsel that plaintiff's claims were subject to arbitration and that it intended to insist on its rights under the agreement (*id.*, Exh. C). In a subsequent email, counsel for defendant laid out in detail, with citation to legal authority, its arguments, which mirror those advanced in this motion. (*See id.*, Exh. D.) Later that same day, plaintiff filed this lawsuit. His weak and wholly unsubstantiated response to the motion demonstrates he had little factual or legal basis for doing so. His failure to even address this aspect of the motion in his response similarly evidences that he has no arguments in contravention of awarding costs. I therefore will exercise my discretion to award defendant its costs. ***See Stephan v. Brookdale Senior Living Communities, Inc.***, 2012 WL 4097717 at *6 (D. Colo. Sept. 17, 2012).

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion To Compel Arbitration** [#7],[5] filed August 28, 2018, is granted;

2. That the parties are ordered to proceed to arbitration of plaintiff's claims;

---

[5] "[#7]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

3. That this case is stayed pending the outcome of arbitration;

4. That defendant is awarded its costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

5. That under D.C.COLO.LCivR 41.2, this action is closed administratively; and

6. That under D.C.COLO.LCivR 41.2, the clerk is directed to close this civil action administratively, subject to reopening for good cause.

Dated December 7, 2018, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge