**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

_____

DARYL L. MOORMAN
STEVEN M. DYMOND,
On their own behalf and on behalf of all
others similarly situated,

                Plaintiffs,

                                     Case No.: 18-cv-820

v.

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS, LLC,
SPECTRUM MANAGEMENT HOLDING COMPANY, LLC,
TWC ADMINISTRATION, LLC

                Defendants.
_____

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
ARBITRATION**
_____

## INTRODUCTION

Defendants have filed a motion to compel arbitration of Plaintiffs' claims in this matter. In support, they rely exclusively on an electronic arbitration "notice" that was purportedly emailed to Plaintiffs – though never executed. Defendants refer to their arbitration process as the "Solution Channel".

In November 2017, Defendants instituted their Solution Channel program that Defendants claim applies to its tens of thousands of employees.  Under this program, employees would waive their Seventh Amendment right to a jury trial, their right to have employment disputes decided in a court of law, and their right to participate in class and collective proceedings.  Employees would waive these fundamental rights without taking any affirmative steps.  Rather, unless employees "opt out" of the Solution Channel program, they are bound by its terms, even though they had no

actual notice of the Solution Channel program's existence.  Defendants have moved to compel arbitration of all claims and to prohibit Plaintiffs and putative class members from participating in class or collective proceedings.   This Court should deny Defendants' Motion to Compel Arbitration and permit the present action to proceed in this Court as a putative class and collective action.

Defendants' Solution Channel program is unenforceable for several reasons.  First, the program would allow employees, including the Plaintiffs, to waive fundamental rights, including their Seventh Amendment right to a jury trial, their right to proceed in a court of law, and their right to participate in class or collective proceedings, even though such waiver was neither knowing nor voluntary, given that employees were not even aware of the program.  Second, the Solution Channel program grants to an arbitrator discretion not to award relief which is available under federal and state law.  For example, liquidated damages are available in an FLSA case and compensatory damages are available in a Title VII intentional discrimination case.  The Solution Channel program improperly commits the type of relief to could be awarded to the discretion of the arbitrator – negating the statutory relief that would typically be available.

Third, participation in the Solution Channel program is ambiguous by its terms.  In one section of the program, it states that participation in the program, for existing employees, is compulsory and a condition of employment, while in another section it permits any existing employee to "opt out" of the program for no reason. Finally, the Solution Channel program is one-sided in that it unfairly punishes employees who seek to properly enforce their rights in federal court.  Where Defendants move to compel arbitration, if the motion is granted, Defendants can seek their attorney's fees from the employees.  However, if the motion is denied, the employees cannot similarly seek payment of their attorney's fees from Defendants.

The Court should also deny Defendants' Motion to Compel Arbitration because Plaintiffs' claims, in large part, pre-date the November 5, 2017 effective date of the Solution Channel program. These claims can proceed in this Court. Plaintiff Daryl Moorman ("Moorman") filed the present action on October 4, 2018. The effective date of the Solution Channel program was November 5, 2017. The statute of limitations under the Fair Labor Standards Act is three years for willful conduct. As alleged in this case, all FLSA violations that occurred on or after October 4, 2015 are actionable. Accordingly, even if the Court concludes that the Solution Channel program is enforceable, the Court should find that the program only applies to claims that accrued after November 5, 2017, the effective date of the program.

This case involves FLSA violations which accrued between October 4, 2015 and November 5, 2017. If the Court finds the Solution Channel program valid and enforceable, Plaintiffs request that the Court permit the Plaintiffs to amend their Complaint to allege federal and Wisconsin wage and hour violations which occurred on or before November 5, 2017.

## STATEMENT OF FACTS

On October 4, 2018, Plaintiff Moorman commenced the present collective action alleging that Defendants violated the Fair Labor Standards Act by failing to pay technicians overtime owed for off-the-clock work performed with Defendants' knowledge and for failure to properly calculate overtime owed to Charter employees on bonuses paid to these employees. (Dkt 1) On January 4, 2019, Moorman filed the Amended Collective Action and Class Action Complaint adding Steven M. Dymond ("Dymond") as a party plaintiff and adding a wage and hour class claim under Wisconsin law. Defendants have moved to compel arbitration and to prohibit Plaintiffs from proceeding on a class or collective action basis.

On or about October 6, 2017, Defendants claim that they notified tens of thousands of employees, through a company e-mail system, that they were instituting a new dispute resolution

3

program entitled "Solution Channel".  (HPS Decl., ¶ 6, Ex. 1.) Under the Solution Channel program, all covered employees waive: their Seventh Amendment right to a jury trial; (*Id.* at p. 1, 4); their right to proceed in a federal or state court; (*Id*. at p. 1, 4); and their right to participate in class or collective actions.  *Id*. at p. 2.

Under the Solution Channel program, with few exceptions, all existing employees were automatically covered by the program unless an employee took the affirmative step to opt out of the program. (HPS Decl., ¶ 7, Ex. 2 at p. 8.)  Employees did not have to take any affirmative steps, such as signing a document or even acknowledging an e-mail, before waiving the above fundamental rights.  Prior to moving to compel arbitration in this case, Plaintiff Moorman had no knowledge of the Solution Channel program. (Moorman Decl., ¶ 7.) [1]  Moorman has no recollection of receiving any e-mail notification regarding the Solution Channel Program. (Moorman Decl., ¶ 5.)  Moorman never acknowledged receiving an e-mail or any materials from Defendants relating to the Solution Channel program.  (Moorman Decl., ¶ 6.)  Moorman was completely unaware of the Solution Channel program until class counsel provided to him a copy of Defendants' Motion to Compel Arbitration which included information on the Solution Channel program.  (Moorman Decl., ¶ 7.)

The Solution Channel program grants to an arbitrator discretion to award a prevailing plaintiff remedies available under applicable law: "13. At the discretion of the arbitrator, the prevailing party may recover any remedy that the party would have been allowed to recover had the dispute been brought in court." (HPS Decl., ¶ 7, Ex. 2 at p. 9.) (emphasis added)  Similarly, under the rights and responsibilities section, the Solution Channel guidelines state: "damages or

---

[1] Plaintiff Steven Dymond has been on military leave out of state and class counsel have been unable to reach Mr. Dymond to inquire as to his prior knowledge of the Solution Channel program.

other remedies allowed by law <u>as deemed appropriate by the arbitrator</u>." (HPS Decl., ¶ 7, Ex. 2 at

p. 13.) (emphasis added)

The Solution Channel program states that participation in the program is a condition of a

Charter employee's employment: "Within limited exceptions, participation in the Solution

Channel is a condition of consideration for employment with Charter and a condition of working

at Charter."    (HPS Decl., ¶ 7, Ex. 1 at p. 8.)   However, the guidelines also state that "those

employees will be covered by Solution Channel unless they opt out." *Id*.  The Solution Channel

program provides that attorney's fees are awarded only to Charter if it prevails on a motion to

compel arbitration but not to employees if the employees prevail on Charter's motion to compel

arbitration:

> "If any judicial action or proceeding is commenced in order to compel
> arbitration and if arbitration is in fact compelled or the party resisting
> arbitration submits to arbitration following the commencement of the action
> or proceeding, the party that resisted arbitration will be required to pay to
> the other party all costs, fees and expenses that they incur in compelling
> arbitration, including without limitation, reasonable attorneys' fees."

(HPS Decl., ¶ 6, Ex. 1  at p. 4.)

The effective date of the Solution Channel program is as follows:

> "V. **Effective Date**.  This Agreement is effective and you are legally bound
> by the terms of Charter's Solution Channel and this Agreement as of the
> date of your consent to participate in Solution Channel."

(HPS Decl., ¶ 6, Ex. 1 at p. 5.)

## ARGUMENT AND AUTHORITY

### I.    THE ARBITRATION AGREEMENT IS UNENFORCEABLE.

Arbitration agreements are treated like any other contract. *Michalski v. Circuit City Stores,*

*Inc.*, 177 F.3d 634, 636 (7th Cir. 1999).  In Wisconsin, unconscionability means "an absence of

meaningful choice on the part of one of the parties together with contract terms which are

unreasonably favorable to the other party." *Lewis v. Epic Sys. Corp.*, 2019 U.S. Dist. LEXIS 11937, *5-6 (W.D. Wis. Jan. 24, 2019). Courts weigh the procedural and substantive factors on a case-by-case basis to determine whether a contract is unconscionable. *Id*. at *6. Procedural factors include the "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party [and] whether alterations in the printed terms were possible." *Id*. (citing *Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co.*, 117 Wis. 2d 601, 602, 345 N.W.2d 417 (1984)). "Substantive unconscionability refers to the fairness and reasonableness of the contract terms being balanced." *Id*. "The balance tips in favor of unconscionability when there is a certain quantum of procedural plus a certain quantum of substantive unconscionability." *Id*. (citing *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 88-90, 483 N.W.2d 585 (Ct. App. 1992)).

The Court should find the Arbitration Agreement unenforceable and unconscionable for the following reasons: (1) Plaintiffs' waiver of fundamental rights was not voluntary and knowing; (2) the remedies available under the Arbitration Agreement are potentially less than those available in a court proceeding; and (3) the Arbitration Agreement is improperly one-sided in that it punishes employees but not the employer by requiring payment of attorney's fees only to the employer if a motion to compel arbitration is granted but not to the employees if such motion is denied.

While the *Lewis* case found that arbitration provision to be valid, it is distinguishable from this case in a number of respects. *Lewis* highlights that the arbitration agreement and accompanying e-mail were relatively short and written in clear, understandable language. *Id*. The plaintiff did not contend that he was confused by the email or the terms of the agreement. *Id*. In this case, Plaintiffs do not even recall ever receiving the notice regarding Solution Channel.

Moreover, in *Lewis*, the court pointed out that the arbitration agreement itself was attached to the e-mail introducing the arbitration program. *Id*. at \*2-3. In contrast, in this case, the e-mail introducing the Mutual Arbitration Agreement required employees to click through multiple links to get to Charter's intranet site and then navigate to the agreement. This is yet another distinguishing point.

Epic's arbitration agreement in *Lewis* is further substantively distinguishable from Charter's agreement in that the Epic agreement applied only to a narrow category of claims, essentially just wage and hour claims. *Id*. at \*3-4. The court highlighted this point in its decision. *Id*. at \*11. Charter's agreement is considerably more expansive in the category of claims it covers.

This case is more in line with *Wisconsin Auto Title Loans, Inc. v. Jones*. In that case, the court found the arbitration provision contained in a loan agreement both procedurally and substantively unconscionable. *Wisconsin Auto Title Loans, Inc. v. Jones,* 2006 WI 53, ¶¶ 7-8, 290 Wis. 2d 514, 522, 714 N.W.2d 155. The court found Wisconsin Auto Title Loans was in the business of providing loans, was experienced in drafting loan agreements, was in a position of substantially greater bargaining power than the borrower, the borrower was indigent and in need of cash, and the loan agreement was an adhesion contract. *Id*. ¶ 7. Combined, these factors rendered the arbitration provision procedurally unconscionable. *Id*. In addition, the agreement allowed Wisconsin Auto Title Loans full access to the courts, but limited the borrower to arbitration. *Id*. ¶ 8. This rendered the agreement substantively unconscionable. *Id*.

Here, Charter has a full panoply of human resource professionals and attorneys who likely drafted and implemented Solution Channel.  Plaintiffs had no idea it was coming, and did not even know it existed until it was brought to their attention in this case.  They were never trained on it, never had to acknowledge it and were never counseled on it.  There is no question as to the greater

bargaining power of Charter versus that of the Plaintiffs and other similarly situated Charter technicians.  And, while Charter can seek attorney's fees for having to enforce the arbitration provision, their employees do not share that same right if they successfully defeat the provision. Simply put, the Solution Channel and attendant arbitration agreement are unconscionable and should be unenforceable.

Not only is the arbitration agreement so one-sided so as to make it unenforceable, but also it forces Plaintiffs to waive their fundamental rights to a jury trial and to statutory remedies.  Given the manner in which Solution Channel was implemented, Plaintiffs were not aware that they were giving up so much.

To have an effective waiver of fundamental rights, the waiver must be knowing and voluntary.  The doctrine of waiver requires a voluntary and intentional relinquishment of a known right.  *Muluaney v. Tri State Trick & Auto Body, Inc.*, 70 Wis. 2d 760, 768, 235 N.W.2d 460 (1975).  Defendants contend that Plaintiffs waived fundamental rights to a jury trial, to proceed with their claims in court, and to participate in class proceedings.  Defendants do not claim that Plaintiffs signed any agreement to waive these rights.  Defendants do not contend that Plaintiffs took any action to waive their rights.  Rather, Defendants claim that Plaintiffs failed to object to being included in the arbitration program, i.e., they did not opt out of the program.  Plaintiff Moorman has stated in declaration testimony that he had no knowledge of the Solution Channel program, that he did not recall receiving any e-mails or materials about the program, was never trained on the program, and that he never signed any document either agreeing to the program or acknowledging the existence of the program or its application to him.

A party cannot knowingly and voluntarily waive a right if he or she has no knowledge that they are doing so.  Defendants could easily have made certain that their employees actually

received the program requiring employees to waive fundamental rights.  Defendants could have requested an electronic signature or any form of electronic acknowledgement that the employee received and had the opportunity to review the Arbitration Agreement and related documents. Defendants did nothing to assure that employees, including Plaintiffs, were aware that they were waiving their fundamental rights.

The nature of the rights that are allegedly being waived is also important.  Defendants' Arbitration Agreement provides that employees waive their right to a jury trial, a right protected by the Seventh Amendment.  Under the Arbitration Agreement, Defendants require waiver of a jury trial, even if the claims proceed in court and not arbitration.  Defendants' Arbitration Agreement provides that employees waive their right to be part of a class or collective action.  The value of wage and hour claims is often small in relation to a single employee, resulting in most employees not pursuing a claim for unpaid wages.  However, that same claim by a class of thousands or tens of thousands of individuals has a substantial value to the employer.  Where the company is saving many millions of dollars which should have been paid to individual employees, waiver of the right to participate in a collective or class action should be knowing and voluntary, particularly where one option is to opt out of the program.  The opt-out provision is meaningless if employees do not know it even exists, as is the case here.

Defendants' arbitration program fails because it does not necessarily provide to employees the same remedies that they would receive under the applicable federal or state substantive law. The Arbitration Agreement grants to the arbitrator the discretion to award remedies available under a particular federal or state law.  Statutorily available remedies should not be limited by an arbitrator in the exercise of his or her discretion.  For example, 42 U.S.C. § 1981a permits an employee, in an intentional discrimination case, to recover compensatory and punitive damages

9

subject to a cap.  If the arbitration provision is upheld, such damages would erroneously be at the discretion of the arbitrator where proof of such damages has been made.  An employer cannot use arbitration to limit damages that otherwise would be available if the case were tried in a court of law.

Finally, the Court should find Defendants' Arbitration Agreement unenforceable where it punishes employees by requiring them to pay legal fees of the employer if the employer prevails on a motion to compel arbitration but does not similarly allow the employees to recover their attorney's fees where the employees prevail on the employer's motion to compel arbitration. Defendants' Arbitration Agreement provides significant disincentive for employees to challenge any motion to compel arbitration, regardless of how lacking in merit the motion may be.  Such disparities and consequences are not permissible.

## II.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL ARBITRATION ON THOSE CLAIMS THAT PRE-DATE THE NOVEMBER 5, 2017 EFFECTIVE DATE OF THE ARBITRATION AGREEMENT.

Defendants claim that their Arbitration Agreement became effective 30 days after Defendants claim they e-mailed the Arbitration Agreement and Solution Channel documents to their employees on October 6, 2017.  That would make the effective date of the Arbitration Agreement November 5, 2017.  The present action was filed on October 4, 2018 and alleges violation of Wisconsin wage and hour law and the FLSA during the three year period prior to the date of filing, or October 4, 2015, approximately two years prior to the effective date of the Solution Channel program.  If the Court concludes that Defendants' Arbitration Agreement is valid and enforceable, the Court should deny Defendants' Motion to Compel Arbitration and permit Plaintiffs to amend their Complaint to allege claims for the period of October 4, 2015 through November 4, 2017.

10

The situation in the present case is similar to that in *Russell v. Citigroup Inc.*, 748 F.3d 677 (6th Cir. 2014), where the Sixth Circuit found that a new arbitration agreement did not apply retroactively.  In *Russell*, the plaintiff worked for one of Citigroup's call centers from 2004 to 2009.  As a condition of employment, he signed a standard contract to arbitrate individual claims, but not class claims.  In January 2012, plaintiff filed a class action lawsuit against the employer.

In late 2012, Citigroup re-hired Russell and Russell signed a new contract.  This time, Citigroup had an updated arbitration contract to cover class action claims.  Relying on the new arbitration contract, Citigroup sought to compel Russell to arbitrate the class action he had previously filed.  The updated arbitration agreement only covered disputes that "arise between [Russell] and Citi"  *Id*.  The Sixth Circuit ruled that use of the present tense "arise" rather than "arose" or "have arisen" meant that the agreement only governed disputes that arise in the present or future. *Id*. at 679. The court concluded that the arbitration agreement regarding class claims did not apply retroactively.

While the *Russell* decision differs somewhat from the present case in that a lawsuit was pending at the time the employer modified the arbitration agreement, that fact was not the basis of the Sixth Circuit's decision.  Rather, the Sixth Circuit focused on the language of the arbitration agreement and concluded that the agreement was intended only to apply prospectively.

In the present case, the Arbitration Agreement contains forward looking language.  The Arbitration Agreement has an effective date provision which states: "**Effective Date**.  This Agreement is effective and you are legally bound by the terms of Charter's Solution Channel and this Agreement <u>as of the date of your consent to participate in Solution Channel.</u>"  (HPS Decl., ¶ 6, Ex. 1 at p. 5.) (emphasis added)  There was no "consent" to participate.  Accordingly, the effective date language must mean the date when the opt-out period concluded.  Based upon the

language of the Arbitration Agreement, employees had 30 days to opt out, or by no later than November 5, 2017. This then is the effective date of the Arbitration Agreement. Claims arising prior to the effective date of the Arbitration Agreement should not be subject to the Arbitration Agreement. The clear language of the Arbitration Agreement does not include claims that arose prior to the effective date.

The language of the Arbitration Agreement related to "covered claims" also indicates that the Arbitration Agreement is to be prospective only:

> 2. all disputes, claims and controversies set forth in Section B.1. above, whether made against Charter or any of its subsidiaries, parents or parent, or affiliated entities, or its individual officers, directors, shareholders, agents, managers, or employees (in an official or personal capacity, if such claim against the employee arises from or in any way relates to your employment relationship with Charter);

(HPS Decl., ¶ 6, Ex. 1 at p. 1.) (emphasis added)

If Charter intended to cover claims that had already arisen, the Arbitration Agreement could easily have stated "arises or arose from". Charter prepared the Arbitration Agreement and any lack of clarity or ambiguity should be construed against it, as the drafter of the documents.

If the Court concludes that the Arbitration Agreement is valid and enforceable, the Court should limit the Arbitration Agreement to claims that arose after the effective date of the Agreement – on or after November 5, 2017. Claims that arose prior to this date and are within the applicable limitations period should be permitted to proceed in this forum as a putative class and collective action. In that case, Plaintiffs would amend their Complaint to clarify the time period of their claims.

## **CONCLUSION**

On the basis of the argument and authority set forth above and the factual record in this

case, Defendants' Solution Channel program is unenforceable.  Alternatively, if such program is

enforceable, the Court should permit Plaintiffs and putative class members to proceed on their

federal and Wisconsin wage and hour claims that accrued prior to November 5, 2017, the effective

date of the Solution Channel program.


 Dated:  February 22, 2019                                Respectfully submitted,

                                                          s/ *Michael J. Modl*
                                                          Michael J. Modl
                                                          Heath P. Straka
                                                          **AXLEY BRYNELSON, LLP**
                                                          2 E. Mifflin Street, Suite 200
                                                          Madison, WI 53703
                                                          Tel:  (608) 257-5661
                                                          Fax:  (608) 257-5444
                                                          mmodl@axley.com
                                                          hstraka@axley.com


                                                          s/ *Robert J. Gingras*
                                                          Robert J. Gingras
                                                          **GINGRAS, CATES & WACHS**
                                                          8150 Excelsior Drive
                                                          Madison, WI 53717
                                                          Tel:  (608) 833-2632
                                                          Fax:  (608) 833- 2874
                                                          gingras@gcwlawyers.com

                                                          *Attorneys for Plaintiffs Daryl Moorman and*
                                                          *Steven Dymond*