IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DARYL L. MOORMAN and STEVEN M.
DYMOND, on their own behalf and on
behalf of all others similarly situated,

       Plaintiffs,      OPINION AND ORDER

 v.

                  18-cv-820-wmc

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS, LLC,
SPECTRUM MANAGEMENT HOLDING
COMPANY, LLC, and TWC
ADMINISTRATION, LLC ,

       Defendants.

---

  Plaintiffs Daryl L. Moorman and Steven Dymond assert claims on behalf of themselves and other similarly situated employees against their employer Charter Communications and related entities, asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin wage payment and overtime laws, Wis. Stat. §§ 103, 104, 109.01. Before the court is defendants' motion to compel arbitration. (Dkt. #27.)[1] Because plaintiffs entered into an enforceable agreement, requiring the arbitration of all disputes arising out of their employment, including the wage and hour-based claims asserted here, and requiring arbitration to proceed on an individual basis, the court will now grant defendants' motion. However, the court will stay this case pending arbitration, rather than dismiss it, finding that plaintiffs have raised a question about the scope of the arbitrable issues, and whether it would cover claims pre-dating the effective

---

[1] Also before the court is plaintiffs' motion to file a sur-reply addressing defendants' argument that an arbitrator should decide the gateway question of arbitrability. (Dkt. #44.) That motion is granted, and the court has reviewed plaintiffs' sur-reply. (Dkt. #44-1.)

date of the arbitration agreement, an issue that the arbitrator will be allowed to reach in the first instance.[2]

ALLEGATIONS OF FACT[3]

A. Allegations in Amended Complaint

Plaintiffs Moorman and Dymond are both technicians employed by Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and/or TWC Administration, LLC (collectively referred to as "Charter" or "defendants"). Moorman's employment with Charter commenced in October 2005; Dymond's employment commenced in April 2014.

Plaintiffs allege that they were not compensated for at least 15 minutes at the start of each workday spent on the following activities: (1) checking their phones or similar devices for mapping routes to their first assignment of the day; (2) removing or returning equipment to their company vehicle; and (3) and inspecting their vehicle. Plaintiffs also allege that Charter paid them non-discretionary, quarterly bonuses that were not include in their total compensation, resulting in an understatement of their actual, regular rate of

---

[2] Whether the arbitrator's ruling on scope should prove definitive is an issue not yet ripe for this court to consider.

[3] A motion to compel arbitration is reviewed in a manner similar to one for summary judgment: the court considers all evidence in the record and draws all reasonable inferences in the light most favorable to the non-moving party. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Scheurer v. Fromm Family Foods LLC*, No. 15-CV-770-JDP, 2016 WL 4398548, at *1 (W.D. Wis. Aug. 18, 2016). In addition to considering plaintiffs' allegations, the court has also considered the arbitration agreement and related documents, including defendants' supplemental filing submitted at the request of the court.

pay for purposes of calculating overtime. Plaintiffs assert these allegations on the part of themselves, as well as a putative FLSA collective and Rule 23 classes of technicians who similarly performed work off the clock and were paid overtime without factoring the impact of non-discretionary bonuses into their regular rate of pay.

### B. Solution Channel Agreement Announcement and Explanation of Arbitration Opt-out Provision for Employees

In an email dated October 6, 2017, Charter announced the launch of Solution Channel to its employees. The announcement was sent by Paul Marchand, Charter's Executive Vice President of Human Resources, to employees' company email accounts. Defendants represent that all employees, including plaintiffs, received the announcement, and include as exhibits emails sent to "Moorman, Daryl L" and "Dymond, Steven M." (Knapper Aff., Ex. A (dkt. #31-1); Knapper Aff., Ex. A (dkt. #32-1).)

In part, the announcement explained that "Charter has launched *Solution Channel*, a program that allows the company to efficiently resolve covered employment-related legal disputes through binding arbitration." (Knapper Aff., Ex. A (dkt. #31-1) 3.) The announcement further explained that:

> By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about *Solution Channel* is located on Panorama. <u>Unless you opt out</u> of participating in *Solution Channel* within the next 30 days, <u>you will be enrolled</u>. Instructions for opting out of *Solution Channel* are also located on Panorama.

(*Id.* (underlining added for emphasis).) The announcement included a link to the Solution

Channel webpage on Panorama, which is Charter's intranet site accessible to all employees. That webpage included an "Opting out of Solution Channel" section, which also explained that:

> *If you do not opt out* of Solution Channel within the designated time, *you will be automatically enrolled* in Solution Channel *and considered to have consented to the terms of the Mutual Arbitration Agreement* at that time. To opt-out of Solution Channel, please **click here**. In the new window that will open, click Main Menu->Self-Service->Solution Channel.

(Vasey Decl. (dkt. #47) ¶ 12 (italics added for emphasis); *id.*, Ex. C (dkt. #47-3).)

After following the links described above, an employee who wanted to opt out, would reach a screen containing the following language:

> After having carefully considered its components, I am opting out of Solution Channel. By opting out, I understand and agree that I am not required to participate in Solution Channel. I also understand that if I am subject to another arbitration agreement, I will remain subject to that agreement. I am only opting out of Solution Channel by completing this form.

(*Id.* ¶ 13; *id.*, Ex. D (dkt. #47-4).) The employee could then check a box indicating "I want to opt out of Solution Channel," electronically sign his or her name, and save the form. (*Id.*)

In response to the court's inquiry about the employees' access to this opt-out process, defendants represented that 9,091 employees who received the October 6, 2017, email, opted out of the Solution Channel agreement, totaling approximately 10% of

4

Charter's employee population. (*Id.* ¶ 19.)[4]

C. **Solution Channel Agreement Provisions**

The Solution Channel Arbitration Agreement (the "Agreement" or the "Arbitrating Agreement") itself provides in pertinent part that:

> You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or employment with charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

(Knapper Decl., Ex. C (dkt. #31-3) 2.) Material to this case, the covered claims include "wage and hour-based claims including claims for unpaid wages." (*Id.*) The agreement also list fourteen excluded claims, none of which touch on the claims at issue here. (*Id.* at 3.)

The Arbitration Agreement further provides that

> You and Charter agree that both parties may only bring claims against the other party in their *individual* capacity and not as a plaintiff or class member in any purported class or representative proceeding, whether those claims are covered claims under Section B, or excluded claims under Section C.

(*Id.*) Under the terms of the Agreement, the employee and Charter also acknowledged "waiving their right to demand a jury trial." (*Id.* at 5.) Finally, the Agreement states that it "will be governed by the Federal Arbitration Act." (*Id.* at 6.)

---

[4] In response to this representation, plaintiffs moved to lift the stay to allow for discovery of opt-out employees (dkt. #48), but because the court concludes that the named plaintiffs are subject to the arbitration agreement, plaintiffs fail to justify their use of the discovery procedures of this federal court to search for someone with actual standing to proceed.

5

Although plaintiffs did not opt-out of the Arbitration Agreement, defendants represent that both declined to stipulate to arbitration before they filed this motion.

OPINION

I. **Arbitration Overview**

There appears to be no dispute that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs defendants' motion. (*See* Knapper Decl., Ex. C (dkt. #31-3) 6 ("This Agreement will be governed by the Federal Arbitration Act.").) *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-14 (2001) (explaining that the FAA covers "all contracts with the Congress' commerce power"); Am. Compl. (dkt. #23) (non-Wisconsin company employing Wisconsin residents, among residents of other states).

Under the Act, a court must compel arbitration where: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) plaintiff has refused to proceed to arbitration in accordance with the arbitration agreement. *See Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006); *Ineman v. Kohl's Corp.*, No. 14-cv-398-wmc, 2015 WL 1399052, at *3 (W.D. Wis. Mar. 26, 2015). Moreover, there is a "presumption of arbitrability" in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," with "[d]oubts . . . resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citing *United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Most recently in *Epic Systems Corporation*

6

*v. Lewis*, 138 S. Ct. 1612 (2018), the Supreme Court reiterated that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Id.* at 1621 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

If enforceable, there is no meaningful dispute that plaintiffs' wage and hour-based claims are covered by the Solution Channel Agreement, nor that plaintiffs have refused to proceed to arbitration. Instead, plaintiffs maintain that the court should refuse to compel arbitration because the Agreement is unconscionable and, therefore, unenforceable. *See Lewis*, 138 S. Ct. at 1622 (providing opening to challenge validity of arbitration agreement if the agreement was "extracted, say, by an act of fraud or duress or in some other unconscionable way that would render any contract unenforceable").

## II. Unconscionability Challenge

Under Wisconsin law, unconscionability means "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lewis v. Epic Sys. Corp.*, No. 15-CV-82-BBC, 2019 WL 330168, at *2 (W.D. Wis. Jan. 25, 2019) (quoting *Discount Fabric House of Racine, Inc. v. Wis. Telephone Co.*, 117 Wis. 2d 587, 601, 345 N.W.2d 417 (1984)). As this court recently explained in another employment-related case seeking to compel arbitration, under Wisconsin law, "the common law doctrine of unconscionability exists to prevent 'oppression or unfair surprise,'" not to "'disturb[ an] allocation of risks because of superior bargaining power.'" *Schultz v. Epic Sys. Corp.*, No. 16-CV-797-WMC, 2019 WL 1332580, at *4 (W.D. Wis. Mar. 25, 2019) (quoting *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis.2d 514, 714 N.W.2d 155 (2006); Richard A. Lord, Williston on Contracts

§ 18.8, at 49-50 (4th ed. 1998)). The court must consider both procedural and substantive unconscionability. "Procedural unconscionability examines the contract's formation to determine whether there was a real and voluntary meeting of the minds." *Schultz*, 2019 WL1332580, at *4 (quotation marks omitted) (citing *Jones*, 2006 WI 53, ¶ 34). "Substantive unconscionability refers to the reasonableness of the contract terms to which the contracting parties agreed, considered in the light of the commercial background and commercial needs." *Id.* at *7 (quoting *Villalobos v. EZCorp, Inc.*, No. 12-CV-852-SLC, 2013 WL 3732875, at *2 (W.D. Wis. July 15, 2013)); *see also Jones*, 2006 WI 53, ¶¶ 35, 36. "A contract is substantively unconscionable if its terms 'are unreasonably favorable to the more powerful party.'" *Id.* (quoting *Jones*, 2006 WI 523, ¶ 36).

The court must also consider unconscionability challenges on a "case-by case-basis," mindful of the Wisconsin Supreme Court's direction that "[t]he more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Jones*, 2006 WI 53, ¶ 33. Nonetheless, "a certain quantum" of each is required to demonstrate unconscionability. *Id.*

Here, plaintiffs offer four bases for finding the Agreement unconscionable. *First*, plaintiffs argue that the Agreement is procedurally unconscionable because plaintiffs' waiver of their rights to proceed in court on a class basis and to a jury trial was "not voluntary and knowing." (Pls.' Opp'n (dkt. #38) 6.) For support, both Moorman and Dymond submit declarations in which they each aver that they do "not recall ever receiving notice of the Solution Channel program," and were "not aware of the Solution Channel program until it was brought to [their] attention in this case." (Moorman Decl. (dkt. #39)

8

¶¶ 5, 7; Dymond Decl. (dkt. #42) ¶¶ 5, 7.) While they may not *recall* receiving the email, they do not dispute receiving it, something otherwise established in the record by the email sent to plaintiffs' company email addresses. (Knapper Aff., Ex. A (dkt. #31-1); Knapper Aff., Ex. A (dkt. #32-1).) Moreover, as defendants point out, the "mailbox rule" -- which establishes a rebuttable presumption that the document in question was "sent, received and read" -- has been extended to emails. *Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013).

As the Seventh Circuit explained in *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), an employee cannot rebut the presumption of receipt or avoid arbitration simply by averring that she does not recall seeing or reviewing the arbitration program materials. *Id.* at 735–36 ("Tinder's only evidence that she never received notice of the program was her own affidavit in which she avers that she 'does not recall seeing or reviewing the Arbitration Program brochure that Defendant alleges was included with her payroll check in October, 1997,' and this does not raise a genuine issue of material fact.") Indeed, as defendants point out, courts routinely enforce arbitration agreements sent by email to employees with an opt-out procedure, similar to that at issue here. (*See* Defs.' Reply (dkt. #43) 5 (citing *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 213–14 (1st Cir. 2019) ("So absent her dissent, the natural interpretation of her conduct is that she accepted. And that must stand. Thus, we agree with the district court that Rivera impliedly accepted this arbitration agreement and is bound by it."); *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *6 (N.D. Ill. June 12, 2018) (upholding arbitration agreement with opt-out provision)).)

While plaintiffs are correct that defendants *could* have structured the arbitration

program as an opt-in procedure, defendants were not obligated to do so under current law. To the contrary, mandatory arbitration agreements -- providing no opt-out mechanism -- have been repeatedly upheld as well. *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) ("It does not follow that this court would invalidate an arbitration agreement such as this one, when we have previously held that a nonoptional, mandatory arbitration agreement is valid."); *Schultz*, 2019 WL 1332580, at *4 (rejecting unconscionability challenges to mandatory arbitration agreement); *Lewis*, 2019 WL 330168, at *3 (same).[5]

*Second*, plaintiffs argue that the Agreement is substantively unconscionable because the "remedies available under the Arbitration Agreement are potentially less than those available in a court proceeding." (Pls.' Opp'n (dkt. #38) 6.) Plaintiffs further argue that the Agreement "grants to the Arbitrator the discretion to award remedies available under a particular federal or state law," and that "[s]tatutorily available remedies should not be limited by an arbitrator in the exercise of his or discretion." (*Id.* at 9.) Whether an arbitrator, a judge or a jury, *someone* has to exercise discretion in awarding remedies; in other words, there is no automatic remedy available in court that is not available in an arbitration provision. Moreover, plaintiffs fail to explain, or again offer any support, for their argument that an arbitrator necessarily would limit damages or have less remedy

---

[5] Plaintiffs attempt to distinguish Epic's arbitration agreement on the basis that it covered "a narrow category of claims" (Pls.' Opp'n (dkt. #38) 7), but fail to direct the court to any case law or legal development that would support distinguishing the Agreement here for purposes of finding it unconscionable, especially in light of the fact that Charter employees could *opt-out* of the agreement. In stark contrast, the only choice for Epic employees who did not want their claims controlled by the arbitration agreement was to quit. *See Lewis*, 2019 WL 330168, at *3.

options available to her. Plaintiffs appear to simply be contesting arbitration as a reasonable resolution mechanism generally, but that argument has been soundly rejected in recent cases, including another decision last week by the Supreme Court. *See Lamp Plus, Inc. v. Varela*, No. 17-988, slip op. at *8 (U.S. Apr. 24, 2019) (holding that a court may not compel classwide arbitration when an agreement is silent on the availability of such agreement).

*Third*, plaintiffs argue that the contract is "ambiguous by its terms," representing that "[i]n one section of the program, it states that participation in a program, for existing employees, is compulsory and a condition of employment, while another section it permits any existing employee to opt-out of the program for no reason." (Pls.' Opp'n) 2.)

The second section refers to the opt-out provision previously discussed, while the first section refers to language in the Program Guidelines for the Solution Channel program, attached as an exhibit to plaintiffs' counsel's affidavit, the relevant portion of which provides: "Within limited exceptions, participation in the Solution Channel is a condition of consideration for employment with Charter and a condition of working at Charter." (*Id.* at 5 (quoting Straka Decl., Ex. 2 (dkt. #40-1) 8).) There is *no* conflict in these two provisions since the 30-day opt-out procedure is itself a "limited exception." In other words, employees who opt-out of the Agreement may maintain their employment with Charter. Regardless, in the court's review of the Agreement and the materials explaining the Agreement, the mere possibility of "limited exceptions" in no way renders ambiguous or inaccessible the straightforward language explaining that the Solution Channel, including resolution of disputes by arbitration, is a condition of employment with

11

Charter.

*Fourth*, and finally, plaintiffs argue that the Agreement is "improperly one-sided in that it punishes employees but not the employer by requiring payment of attorney's fees only to the employer if a motion to compel arbitration is granted but not to the employees if such motion is denied." (*Id.* at 6 (citing *Jones*, 2006 WI 53, ¶ 7 (finding arbitration agreement unconscionable in part because the agreement allowed Wisconsin Auto Title Loans full access to the courts, but limited the borrower to arbitration)).) This argument also rests on a flawed reading of the Agreement.

The Agreement does not distinguish between employees and Charter; instead, the referenced section of the Agreement provides:

> If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

(Knapper Decl., Ex. C (dkt. #31-3) 4.) In other words, if Charter were to bring a court action against an employee subject to the Arbitration Agreement for "collection of overpaid wages," "damage to or loss of Charter property," or "recovery of unauthorized charges on company credit card" -- all "covered claims" under the terms of the Agreement -- the *employee* could compel arbitration and seek his or her attorneys' fees and costs in doing so. This provision, therefore, is mutual and not improperly one-sided.

Having rejected each of these arguments, the court concludes that plaintiffs have failed to meet their burden of establishing unconscionability. *See Villalobos*, 2013 WL

12

3732875, at *2 (noting that it is plaintiff's burden to establish unconscionability). Accordingly, the court will grant defendants' motion to compel arbitration.

III. Scope of Arbitration

There is one remaining issue, however. In their opposition brief, plaintiffs request that, if the motion to compel is granted, the court allow plaintiffs to amend their complaint to assert claims for the period of October 4, 2015, three years before the filing date, through November 4, 2017, the day before the Arbitration Agreement went into effect. Plaintiffs argue that the Arbitration Agreement does not apply retroactively, and, therefore, their wage and hour-based class claims preceding the Agreement should be able to continue in this court.

Reasonable though that argument would appear on its face, the Arbitration Agreement, which provides that "all disputes related to the arbitrability of any claim or controversy" are themselves arbitrable, dictates a different result. (Knapper Decl., Ex. C (dkt. #31-3).) While plaintiffs are correct, as they point out in their sur-reply, that there is a presumption that a court decides disputes about arbitrability, *see Wis. Local Gov't Property Ins. Fund v. Lexington Ins. Co.*, 840 F.3d 411, 414-15 (7th Cir. 2016), the case law is also explicit that parties can agree to arbitrate "gateway" questions of arbitrability. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding that parties can agree to arbitrate "gateway" questions of arbitrability); *see also Grasty v. Colo. Tech. Univ.*, 599 Fed. Appx. 596, 598 (7th Cir. 2015) ("[W]e must enforce the parties' agreement to arbitrate 'gateway' questions about arbitrability of claims and the scope of the arbitration agreement." (citation omitted)).

13

Here, the language in the Agreement requiring that an arbitrator is to consider "all disputes related to the arbitrability of any claim or controversy" is "clea[r] and unmistakeabl[e] evidence" that the parties intended for gateway questions to be arbitrable. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT & T Techs.*, 475 U.S. at 649). As such, the question of whether the Arbitration Agreement covers any claims pre-dating its effective date is for the arbitrator to consider in the first instance. Because of this question and concerns about possible statute of limitations implications, however, the court will stay this case rather than dismiss it subject to reopening. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (counseling generally for district courts to "stay the proceedings rather than to dismiss outright"); *Employers Ins. of Wausau v. Cont'l Cas. Co.*, No. 15-CV-226-WMC, 2016 WL 632642, at *3 (W.D. Wis. Feb. 17, 2016) (recognizing exception, and dismissing cases, where "there is nothing for the court to decide unless and until a party seeks confirmation of or challenges the arbitrators award") (internal citation and quotation marks omitted)). During the stay, plaintiffs are directed to provide the court with a status update every six months.

ORDER

IT IS ORDERED that:

1) Defendants Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and/or TWC Administration, LLC's motion to compel arbitration (dkt. #27) is GRANTED.

2) Plaintiffs Daryl L. Moorman and Steven Dymond's motion for leave to file a sur-reply brief (dkt. #44) is GRANTED.

3) Plaintiffs' motion to lift stay of discovery (dkt. #48) is DENIED.

4) The clerk's office is directed to stay this case pending arbitration.

Entered this 1st day of May, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge